Argued December 6, 1923, modified February 26, motion to strike
cost bill allowed, rehearing denied, March 25, 1924.

## L. D. HOY v. MILDRED BILADEAU, LOUIS BILADEAU AND HENRY L. BILADEAU.

### (223 Pac. 241.)

**Mortgages—Mortgage not Discharged by Change in Form of Debt.**

1. A mortgage given as security for a debt is not discharged by
a change in the form of the indebtedness, and nothing short of
actual payment or express release of the mortgage will discharge it.

**Mortgages—Renewal of Note and Inclusion of Other Items Therein
not Discharge of Mortgage, in Absence of Intention.**

2. Renewal of a note secured by mortgage, and the inclusion
therein of accrued interest, together with additional indebtedness,
does not discharge the lien of the mortgage as security for the
original debt, in absence of intention or agreement to effect that
result.

**Chattel Mortgages—Satisfaction of Mortgage Held not to be Release
of Debt.**

3. Where mortgagee of land and chattels, after receiving addi-
tional chattel security, executed satisfaction of the first chattel

---

Renewal of note as discharge of chattel mortgage in the ab-
sence of agreement, see note in 35 L. R. A. (N. S.) 89.
See 11 C. J., p. 693; 22 C. J., p. 1138; 27 Cyc. 1075, 1655.

mortgage to permit its cancellation of record to avoid the inference that there were two chattel mortgages on the same property, but did not intend to release the original debt, and no part of it had been paid, and by mistake the certificate of release declared the chattel mortgage together with the debt thereby secured was fully paid, mortgagors having acquired no new rights because of the purported release cannot take advantage of it.

**Evidence—Recital of Payment Held not Conclusive.**

4. Recital of payment of debt secured, inserted in satisfaction of chattel mortgage by mistake, *held* but prima facie evidence of payment, which might be overcome by evidence clearly showing nonpayment.

**Judgment—Decree for Amount of Debt Secured by Mortgage Only Held Proper.**

5. In absence of proof of agreement to make the mortgage security for debts subsequently contracted, in awarding decree for amount of the mortgage only there was no error.

From Deschutes: T. E. J. DUFFY, Judge.

Department 2.

MODIFIED.  MOTION TO STRIKE COST BILL ALLOWED.  REHEARING DENIED.

For appellants there was a brief over the names of *Mr. R. B. Parsons* and *Mr. W. P. Myers,* with an oral argument by *Mr. Parsons.*

For respondent there was a brief and oral argument by *Mr. C. S. Benson.*

McCOURT, J.—This is a suit to foreclose a mortgage upon real property situated in Deschutes County, Oregon. Defendants appeal from a decree in favor of plaintiff.

For the purpose of giving plaintiff security for the payment of their promissory note for $7,000, payable to the order of plaintiff in annual installments of $1,000 and accrued interest, defendants on September 12, 1918, executed and delivered to plaintiff a mortgage upon 160 acres of land, and certain water rights

appurtenant thereto, title to which stood in the name of the defendant, Mildred Biladeau.

On the same date, as additional security for the payment of the above-mentioned promissory note, defendant Louis Biladeau executed and delivered to plaintiff a chattel mortgage upon 1,060 female goats, with their female increase.

Defendants were unable to pay the principal and interest upon their note to plaintiff secured by the mortgages, as above stated, at the date the same became due, to wit: September 15, 1919.

During the preceding winter, plaintiff advanced defendants $700 to purchase hay with which to feed the goats owned by them, and in the summer sold to defendants 121 goats at prices agreed upon, thereby increasing the financial obligations of defendants to him, so that on September 22, 1919, defendants were indebted to plaintiff in the sum of $8,491.

On September 22, 1919, defendants owned 1,600 female goats, with their female increase. On that date, as evidence of their entire indebtedness to plaintiff, defendants executed and delivered to plaintiff a new note for $8,491, payable on or before four years after date, in annual installments of $1,000 and accrued interest, and at the same time, as additional security for the payment of their debt to plaintiff, defendants executed and delivered to plaintiff a chattel mortgage covering the entire herd of goats then owned by defendants.

Upon the execution of the note for $8,491 and the chattel mortgage given at that time as additional security for the indebtedness of defendants to plaintiff, the latter surrendered to defendants the note for $7,000, and for the purpose of satisfying of record the chattel mortgage given on September 12, 1918, plain-

tiff executed and delivered to defendants a formal written satisfaction thereof. The last-mentioned instrument was prepared on, or from, a form which contained a certificate and declaration to the effect that the chattel mortgage described therein, "together with the debt thereby secured, is fully paid, satisfied and discharged."

Defendants failed to pay the indebtedness, or any part thereof, evidenced by their promissory note to plaintiff, and upon September 9, 1922, plaintiff foreclosed the chattel mortgage given as security for the same, and sold the goats covered thereby which were then owned by, and in the possession of, defendants, realizing upon the sale the sum of $852.80, which sum was credited by plaintiff upon the indebtedness of defendants to him. All the goats covered by the chattel mortgage, except 573, were lost or had died between the time the mortgage was given and the time of foreclosure, and that fact accounts for the comparatively small sum realized upon the foreclosure sale.

On December 15, 1922, this suit was instituted. Plaintiff's complaint in substance alleges the facts above stated. A specific allegation of the complaint relates to the continuance of the mortgage upon the real estate as security for the original indebtedness of defendants to plaintiff after the execution and delivery of the new note and chattel mortgage on September 22, 1919. That allegation is as follows:

"That it was then and there further orally agreed by and between the plaintiff and said defendants that the hereinbefore described real estate mortgage should continue in full force and effect as partial security for the said second above-described note; and said real estate mortgage is still a valid, existing lien upon said real property therein described."

Defendants answering, denied the foregoing allega-
tion of the complaint, but admitted the other material
averments thereof. As an affirmative defense, de-
fendants alleged payment and surrender of the
$7,000 note described in plaintiff's complaint and the
execution and delivery of the satisfaction releasing
the chattel mortgage of September 12, 1918, upon
1,060 female goats and their increase, and specially
referred to the clause therein purporting to release
the debt, which the chattel mortgage was given to
secure.

In their answer, defendants further alleged that
the execution of the above-mentioned satisfaction
estopped plaintiff from pleading or attempting to
prove that the $7,000 note had not been paid and
from pleading or attempting to prove an oral con-
tract or agreement between defendants and plaintiff,
by virtue of which the mortgage upon the real prop-
erty was continued as security for the new note
given at the time the $7,000 note was surrendered
and satisfaction of the chattel mortgage executed.

In response to the affirmative matter in defend-
ants' answer, plaintiff, in his reply, after alleging the
circumstances under which the note and chattel mort-
gage, each dated September 22, 1919, were given, and
that it was agreed between the parties that the chat-
tel mortgage first given should be discharged but
without acknowledgment of the payment of the debt
secured in part thereby, alleged as follows:

" * * that owing to the inadvertence and mis-
take of the person who drew the instrument pur-
porting to discharge said chattel mortgage and the
oversight and mistake of plaintiff and said defend-
ants, the plaintiff in said instrument of discharge,
acknowledged the payment of the indebtedness par-
tially secured by said chattel mortgage, although it
was the intention and agreement of plaintiff and

said defendants that said release should merely discharge said mortgage and not acknowledge payment of the debt secured thereby or any part thereof * *.''

While defendants in their answer allege payment of the indebtedness evidenced by the note of $7,000, dated September 12, 1918, they offered no proof of the actual payment of that indebtedness, or any part thereof. The undisputed evidence established that the entire amount of that indebtedness existed at the time the second note was given; also that no payments were ever made thereon by defendants or anyone in their behalf. The uncontradicted evidence further established that the original indebtedness was included in the amount shown upon the face of the second note, and that no part of that note had been paid.

The second note and chattel mortgage were given in response to the demand of plaintiff for more security than he then held, which demand was prompted by the failure of defendants to pay any part of the first installment of principal and interest due upon their note to plaintiff or upon defendants' additional indebtedness to plaintiff incurred in the year preceding.

In the circumstances referred to, an intention upon the part of plaintiff to release the principal security held by him, is not to be inferred, except upon strong proof indicating such an intention. Nothing was said by any of the parties about releasing the mortgage upon the land at the time the second note and chattel mortgage were executed. Defendants did not request or expect a release of either the real estate mortgage or the debt secured thereby, and plaintiff did not indicate any purpose or intention of relinquishing that or any other security held by him. He was engaged in an effort to obtain additional security. The only discus-

sion between the parties in reference to a release referred to the original chattel mortgage covering 1,060 female goats and their increase. It was understood that it was necessary to release that chattel mortgage in order to avoid the inference that there were two chattel mortgages upon the goats, which, in the absence of such a release, might arise from the record when the second chattel mortgage should be recorded. It is clear from the evidence that plaintiff executed the satisfaction of the original chattel mortgage solely for the purpose last stated, and that he did not intend by that instrument to release the debt for which that chattel mortgage and the real estate mortgage were security. It is equally clear that defendants did not suppose he had any such intention, and that none of the parties at the time knew that the satisfaction executed by plaintiff purported to release the debt. The real estate mortgage was not referred to in the instrument upon which defendants rely, and no claim is made that it has been released otherwise. No rights of third parties have intervened which require protection of a court of equity.

The surrender by plaintiff of the $7,000 note described in the real estate mortgage, and the language of the release of the chattel mortgage purporting to discharge the debt evidenced by the above-mentioned note, are relied upon by defendants to defeat plaintiff's suit. Defendants also claim that the real estate mortgage could not be continued by an oral agreement between the parties as security for the original debt after a new note for a different amount had been given.

1. It is a firmly established rule that a mortgage given as security for a debt is not discharged by a change in the form of the indebtedness, and that noth-

ing short of actual payment of the debt or an express release of the mortgage will operate to discharge the same.

2. It is also well settled that the renewal of a note secured by mortgage, and the inclusion in such renewal note of accrued interest, together with additional indebtedness, does not discharge the lien of the mortgage as security for the original debt, in the absence of an intention or agreement of the parties to effect that result: *Pearce* v. *Buell,* 22 Or. 29 (29 Pac. 78); Jones on Mortgages (7 ed.), §§ 924, 930; 27 Cyc. 1075; 19 R. C. L. 450, 452.

In the absence of an express agreement and of any circumstances showing intention, the renewal of the note does not affect the security: Jones on Mortgages (7 ed.), §§ 926, 976. In Section 926 the author says:

"But not only will the intention of the parties be determined by the express agreement of the parties, but, in the absence of this, by the circumstances attending the transaction from which such intention may be inferred.

"So the question whether or not the taking of a new security of equal dignity is to be treated as a novation or substitution for and an extinguishment of a prior indebtedness is a matter of intention to be determined from all the facts and circumstances of the case."

*Pearce* v. *Buell, supra,* is a case very much in point on the questions under consideration. There Pearce, the mortgagee, had taken a new note and mortgage from the grantees of the mortgagor as substitutes for the former note and mortgage, and canceled and released the latter mortgage, and the debt secured thereby, in ignorance of an intervening lien upon the mortgaged premises. Fraud was alleged, but no

proof was offered to establish the same. Mr. Justice BEAN, speaking for the court, said:

"This mere change in the form of the indebtedness did not operate as a payment of the * * mortgage or discharge the lien, because it was evidently not so intended by the parties. * *

"In such case a court of equity will look through the form to the substance and keep alive the original security if it can be done without injury to third parties. No rule of law is better settled than if the holder of a mortgage take a new mortgage as a substitute for a former one, and cancel and release the latter in ignorance of the existence of an intervening lien upon the mortgaged premises, although such lien be of record, equity will, in the absence of the intervening rights of third parties, restore the lien of the first mortgage and give it its original priority. * *

"The cancellation of a mortgage is but *prima facie* evidence of its discharge, and it may be shown that it was made by mistake, as is clearly the fact in the case here. * * The principle running through all the cases of this class, says BARCULO, J., 'is, that when the legal rights of parties have been changed by mistake, equity restores them to their former conditions when it can be done without interfering with any new rights acquired on the faith and strength of the altered condition of the legal rights, and without doing injustice to other persons.' (*Barnes* v. *Camack*, 1 Barb. (N. Y.) 392.) In such cases a court of equity will look through the form to the substance of the transaction and keep an encumbrance alive, or consider it extinguished as will best serve the purposes of justice and the intention of the parties."

3. In the instant case the mortgage was not released and no part of the debt secured thereby had been paid. That debt constituted the entire principal of the new note, except $931. The new note contains an express promise upon the part of defendants to pay that indebtedness. The execution and delivery of

the latter note, and its acceptance by plaintiff, clearly show that the parties did not intend that any part of the debt evidenced thereby should be released. The absence of any release or satisfaction of the real estate mortgage, excludes any inference of an intention to release the same. It is equally clear that the apparent release of the debt occurred by mistake. Defendants have not acquired any new rights on the faith and strength of the purported release, and it would be inequitable and unjust to permit them to take advantage of such mistake.

4. The authorities do not sustain the contentions advanced by the defendants, that the right of plaintiff to avoid the mistake under consideration is controlled by the strict rules of pleading and proof applicable where reformation of a written instrument · is sought on the ground of mutual mistake.

Under the doctrine stated in *Pearce* v. *Buell, supra,* the recital, "the debt thereby secured, is fully paid, satisfied and discharged," inserted in the satisfaction of the chattel mortgage by mistake, was but *prima facie* evidence of payment, which might be overcome, as it was, by evidence clearly showing that the debt had not in fact been paid: *Pettit* v. *Louis,* 88 Neb. 496 (129 N. W. 1005, 34 L. R. A. (N. S.) 356).

5. The court was correct in awarding plaintiff a decree of foreclosure. However, it was not admissible in such decree to allow plaintiff a recovery for any indebtedness except that represented by the original note of $7,000, for the reason that there is no evidence of an agreement, either written or oral, between the parties to make the real estate mortgage a security for debts subsequently contracted: 27 Cyc. 1074.

Plaintiff was entitled to recover the sum of $7,000, with interest thereon at the rate of 8 per cent per annum from the twelfth day of September, 1918; also to a judgment for attorney's fees, and a decree foreclosing the mortgage, as given by the Circuit Court. The credit to which the defendants were entitled for the sum realized upon the sale of goats on foreclosure of the chattel mortgage should be applied upon those items of indebtedness included in the second note, which were contracted subsequent to the execution and delivery of the real estate mortgage.

The decree of the Circuit Court is modified as above indicated, but in all other respects it is affirmed.

MODIFIED. MOTION TO STRIKE COST BILL ALLOWED. REHEARING DENIED.

McBRIDE, C. J., and BEAN and BROWN, JJ., concur.