THE STOCKMEN'S NAT'L BANK OF CASPER v.
THE LUKIS CANDY COMPANY, ET AL;
DENVER SODA FOUNTAIN COMPANY,
ET AL, INTERVENERS

(No. 1843; June 12, 1934; 33 Pac. (2d) 254)

For the appealing interveners, the cause was submitted on the brief of *S. E. Phelps*, of Casper. No brief was filed on behalf of the respondents.

KIMBALL, Chief Justice.

Respondent, the Stockmen's National Bank of Casper, was plaintiff; appellants, Pete Thomas and Denver Soda Fountain Company, were interpleaders, in an action brought by plaintiff against the Lukis Candy Company and the Princess Confectionery Company, corporations, defendants. Hereinafter the parties will be referred to as plaintiff, interveners and defendants; the defendants, when separately mentioned, as the Lukis Company and the Princess Company. Plaintiff, as mortgagee, claimed a first lien on property of defendants by virtue of a chattel mortgage executed by the Lukis Company on May 29, 1924, to secure a debt evidenced by a promissory note of the same date for $5,550 due November 25, 1924. Plaintiff held another chattel mortgage executed September 22, 1924, by the defendant Princess Company to secure the same debt evidenced by a promissory note for $5,905.10, due March 20, 1925. The petition alleges that this latter note and mortgage were given "as additional security"

for the note of the Lukis Company. The two defendant corporations had the same officers, were engaged in the same business, and apparently their interests are identical.

The plaintiff's petition asked a decree establishing a first and prior lien in its favor against the property described in each of the mentioned mortgages; for appointment of a receiver, and for foreclosure.

Three parties claiming liens on the mortgaged property were permitted to intervene, and filed separate petitions. The petition of one intervener was dismissed with prejudice during the trial. The questions in the case arise on the claims of the two remaining interveners as opposed to the claim of the plaintiff. The defendants defaulted by failing to answer the plaintiff's and interveners' petitions.

The claim of one of the interveners is based on a written contract dated February 6, 1924, between him and the two defendants, whereby the intervener sold all his interest in each of defendants to the defendants who, as part of the consideration, agreed to pay $1500 evidenced by a promissory note payable to intervener on or before August 5, 1924. The writing recites that intervener "shall have and is hereby given an equitable lien upon all of the property and rights" of defendants to secure the fulfillment of the contract. The contract, with an attached affidavit reciting that the contract was in full force, was recorded in the Miscellaneous records of the county clerk on February 19, 1924. The claim of the other intervener is based on a similar contract of the same date and recorded at the same time. While the interveners' claims were set forth in separate pleadings, it will be unnecessary hereinafter to mention them separately as they have the same standing as opposed to the claim of the plaintiff.

The district court found that plaintiff's mortgage,

dated May 29, 1924, was a valid and subsisting lien superior and prior to the liens of the interveners; gave judgment to plaintiff and each intervener for the amounts of their respective claims; gave interveners liens of equal priority between themselves but second and inferior to the lien of the plaintiff. The interveners appeal, and in a brief of eighty pages discuss numerous specifications of error. No brief has been filed on behalf of respondent.

The original petition and the praecipe for summons, filed at the commencement of the action, bear the clerk's endorsement, "filed for record this 29 day of Dec. 1924." The summons is dated and was served on defendants December 27, 1924. The sheriff's return certifies that service of the summons was made "by delivering to C. Lucas Pres. of The Princess Con Co and Lucas Canday Co personally a true and correct certified copy of the same, together with copy of petition." The name of the president of the two companies, as subscribed to papers in the record, is C. Lukis. Appellants contend that, because of the defects in the issuance and service of summons, the court acquired no jurisdiction to render any judgment against defendants.

The defendants have not appealed, and we do not think the interveners are in a position to contend that the action against defendants was not properly commenced, or that the court did not acquire jurisdiction over defendants. The interveners came into the case voluntarily pursuant to an order made on their applications for permission to intervene. Their petitions of intervention claiming relief against defendants were served on defendants as required by the order permitting intervention. The judgment recites that defaults of defendants were ordered on "motion being made in open court by all of the appearing parties." The "appearing parties" included the interveners. The

alleged defects in the issuance and service of process were not called to the attention of the trial court before or after judgment, except by a specification of error alleging that "the court was without authority to make any judgment for money or affecting property rights between plaintiff and defendants, or either of them, or as between said defendants, or either of them and the intervener." The reason for the lack of authority is not stated and we doubt that the specification was sufficient to inform the trial court of the contentions that interveners now make in regard to the process served on defendants. If interveners had any right to attack the proceedings whereby the defendants were summoned, they should have done so prior to judgment. They, as well as plaintiff, were interested in seeing that the court had authority to render a judgment that would be binding on defendants. If the alleged irregularities had been called to the trial court's attention, the facts which would then have been inquired into might have warranted amendments that would have removed all the apparent defects.

The plaintiff's petition stated that the note of the Lukis Company was dated August 15, 1923, and due November 13, 1923, and that a copy was attached as Exhibit A. Exhibit A is a copy of the note, above mentioned, of the Lukis Company, dated May 29, 1924, and due November 25, 1924. The chattel mortgage copy of which was also attached as an exhibit to the petition shows that it was given to secure a note of May 29, 1924, due November 25, 1924. Plaintiff's answers to the interveners' petitions alleged, and the evidence showed, that the indebtedness secured by plaintiff's mortgage was originally evidenced by a note of August 15, 1923, and secured by a chattel mortgage of that date. That note and mortgage were renewed by the note and mortgage of May 29, 1924. There is no doubt that plaintiff in its petition intended to de-

scribe the transaction of the latter date, but in describing the note inserted by mistake the dates of the old note. At the trial it was permitted, over interveners' objection, to amend the petition by changing the dates so that they would correspond with the dates shown by copies of the note and mortgage attached to the petition. It is clear without discussion that the appellants were not prejudiced by the amendment and that the court did not err in permitting it.

The plaintiff's petition asserts rights under the mortgage given by the Princess Company as well as under the one given by the Lukis Company, but at the trial its claim under the Princess Company mortgage was virtually abandoned, and the only lien given plaintiff by the judgment is under the mortgage from the Lukis Company which was filed for record June 4, 1924. When the interveners filed their petitions claiming liens by virtue of contracts filed February 19, 1924, the plaintiff answered that the note and mortgage of the Lukis Company were renewals of a similar note and mortgage dated August 15, 1923, on which nothing had ever been paid, and that the former mortgage was filed August 18, 1923. The evidence justified a finding that plaintiff's lien under the old mortgage attached in 1923, prior to the interveners' liens, and that priority was not lost by renewal of the note and mortgage in May, 1924, unless for some of the reasons now to be considered the chattel mortgages to plaintiff are invalid as against the liens of interveners. See Megown v. Fuller, 38 Wyo. 211, 218, 266 Pac. 124. It is unnecessary to consider whether the recording of interveners' contracts gave constructive notice of their claimed liens.

Both mortgages from the Lukis Company to plaintiff were acknowledged before a Notary Public who was cashier for plaintiff and owner of shares of its stock. The Notary also acted as the sole witness to the

signatures of the mortgagor. The interveners contend that the cashier was incompetent to act either as acknowledging officer or as witness, and, therefore, the chattel mortgages were not entitled to be filed and are void as to the interveners. Section 75-114, R. S. 1931, in force in its present form since 1919 provides that: "It shall be unlawful for any notary public who is a stockholder, director, officer or employee of a bank or other corporation to take the acknowledgment of any party to any written instrument executed to or by said corporation * * *." Before this statute was passed, this court had held that a Notary Public who was an officer and stockholder of a corporation was disqualified and incompetent to take the acknowledgment of an instrument to which the corporation was a party. First National Bank v. Citizens State Bank, 11 Wyo. 32, 70 Pac. 726. Interveners contend that section 75-114 is unconstitutional, but there is no reason why that contention should be considered. Nor is it necessary to decide whether or not the cashier of plaintiff was incompetent to act as a witness to the signatures of the mortgagor.

The mortgages from the Lukis Company to plaintiff were valid between the parties without acknowledgment or witness. If the officer who took the acknowledgment and signed as a witness was disqualified by his interest in the plaintiff, the fact did not show on the face of the instruments. The mortgages were entitled to be filed for record and were filed. The record operated as constructive notice notwithstanding the latent defects in the instruments. In Boswell v. First National Bank, 16 Wyo. 161, 181, 92 Pac. 624, decided before section 75-114, supra, was passed, the court, after expressing approval of the rule that an officer who is beneficially interested in a transaction is incompetent to take and certify the acknowledgment to an instrument, said:

"The statement occasionally to be found in judicial decisions to the effect that an acknowledgment taken before an officer disqualified on account of interest is void for all purposes is not, we think, entirely accurate if intended to apply in all cases. Its correctness may be conceded in respect to instruments which are absolutely void without a proper acknowledgment, and also instruments which disclose the defect upon their face or the face of the certificate of acknowledgment. Where, however, the infirmity is not apparent upon the face of the deed or instrument or certificate of acknowledgment, but the acknowledgment appears to be fair and regular and to have been properly taken, and the instrument is one which would not be invalidated as between the parties to it by a defective acknowledgment, the recording of the instrument in the proper office will operate as constructive notice thereof, notwithstanding the latent defect."

See, also, Harney v. Montgomery, 29 Wyo. 362, 377, 213 Pac. 378.

The above cases speak of instruments defectively acknowledged, but the principle applies also when the witness is incompetent because of an interest that does not appear on the face of the instrument. See J. W. Dillon & Son Co. v. Oliver, 106 S. C. 410, 91 S. E. 304; Lankford v. First National Bank, 75 Okl. 159, 183 Pac. 56.

The defendants, as their names imply, were engaged in the confectionery business. Their merchandise held for sale in the ordinary course of business consisted of candies, ice cream and the like. The chattel mortgage from Lukis Company to plaintiff given in August, 1923, and the renewal mortgage between the same parties given in May, 1924, covered motors, tables, cooking furnaces, molds, cutters, kettles and other machinery and appliances used in the manufacture and handling of candies, together with desks, chairs, typewriter and filing cabinet, and did not cover any of the stock held for sale in the ordinary course of business,

or any articles that would be destroyed or lost by use in the business. The mortgage from the Princess Company to plaintiff given September 22, 1924, was of different property. It includes the "entire stock of candies," and candy materials, candy boxes and cartons, wax papers and many other articles including 5 dozen candy trays, not described in the mortgages given by the Lukis Company. The mortgagors continued in business until the latter part of December, 1924, and with plaintiff's knowledge and probably with its implied consent, sold from the merchandise covered by the Princess Company mortgage, and applied no part of the proceeds to the reduction of the mortgage indebtedness. Because of such sales, it is claimed that the plaintiff's lien is of no validity as to the interveners who rely on the principle that where the mortgagor of a stock in trade is permitted by the mortgagee to remain in possession and to make sales in the ordinary course of business, applying the proceeds to his own use if he sees fit, the transaction is fraudulent and void as to creditors. 11 C. J. 573.

The three mentioned chattel mortgages are on the same form. None of them contains any provision permitting sales of the mortgaged property. The mortgagors could "use and enjoy" the property, but sales are expressly forbidden "except with the consent in writing" of the mortgagee. The mortgages of the Lukis Company cover no property held for sale in the ordinary course of business. There is no evidence from which it could be inferred that any of the property covered by those mortgages was sold or intended to be sold. Those mortgages were valid against interveners, unless rendered void by subsequent transactions relating to the stock in trade covered by the mortgage given in September, 1924, by the Princess Company.

In considering this question we assume that the mortgage on the merchandise held for sale was void as to the interveners. The question, then, is whether or not plaintiff's lien under the Lukis Company mortgages of machinery, appliances and furniture, became void as to interveners when, to secure the same debt, plaintiff took from the Princess Company a mortgage on merchandise and permitted sales thereof in the usual course of business by the mortgagor.

We find no other case in which it was claimed that a valid mortgage on some of the mortgagor's property became void as to creditors because of permission to sell different property covered by a later mortgage given as additional security for the same debt. The authorities to which we must look consider the effect of a mortgage covering property which the mortgagor was permitted to sell and other property to which the permission to sell did not apply. The cases are not in harmony. See Jones on Chattel Mortgages, §§ 350-351; note 73 A. L. R. 293-296; 11 C. J. 582. We think the better rule, followed in a majority of the jurisdictions in which the question has been decided, is that unless the mortgagee has been guilty of actual fraud by participating in a transaction intended to hinder, delay or defraud creditors, the mortgage, though void as to the property permitted to be sold, is good as to the property to which the permission to sell did not apply. There can be no doubt that permission to sell in the usual course of business from a stock of mortgaged merchandise may be given without intending to defraud creditors, and without in fact having that effect. Etheridge v. Sperry, 139 U. S. 266, 35 L. ed. 171, 11 Sup. Ct. Rep. 565. If there happen to be creditors, the mortgage as to them may be constructively fraudulent and void without regard to the innocent intentions of the parties to the mortgage. But, if the mortgage also covers property not permitted to be sold, the mortgage

of that property should be upheld unless the transaction is tainted by fraud in fact. This view is supported by many cases cited in the texts above cited. Full discussions are found in Rocheleau v. Boyle, 11 Mont. 451, 28 Pac. 872; Hayes v. Westcott, 91 Ala. 143, 8 So. 337, 11 L. R. A. 488, 25 Am. St. Rep. 875; Eastman v. Parkinson, 133 Wis. 375, 113 N. W. 649, 13 L. R. A. (N. S.) 921; Meyer v. Martin, 351 Ill. 386, 184 N. E. 617.

In this case the court was free to find from the evidence that the plaintiff, in failing to object to sales of merchandise which it knew were being made of some of the property covered by the Princess Company mortgage, did not intend to hinder, delay or defraud the creditors of the mortgagors, and was not guilty of actual fraud or fraud in fact. We assume that that mortgage was void as to interveners because of constructive fraud or fraud in law that did not affect the validity of the Lukis Company mortgage on which the decree is based.

The judgment does not mention the Princess Company mortgage, but, as shown above, establishes a prior lien in favor of plaintiff by virtue of the Lukis Company mortgage filed June 4, 1924, which was found to be a renewal of the mortgage from the same company filed August 18, 1923. The property is listed in the judgment. The list evidently by mistake, includes "5 doz. candy trays; wax papers; candy packing cartons." These articles are not described in the mortgage on which the judgment is based and should be struck from the list by a modification of the judgment.

We have discussed the interveners' contentions that seem mainly to be relied on. Other contentions made in the briefs have been carefully considered but need not be discussed as they seem to refer to matters that are immaterial on the merits if the questions covered by our opinion are decided correctly.

It will be ordered that the judgment be modified as indicated above, and, as so modified, affirmed.

*Modified and Affirmed.*

BLUME and RINER, JJ., concur.