[Civil No. 3428. Filed January 3, 1935.]

[40 Pac. (2d) 81.]

BUERGER BROTHERS SUPPLY COMPANY, Appellant, v. EL REY FURNITURE COMPANY, a Corporation, Appellee.

Mr. John W. Ross and Mr. William O. Perry, for Appellant.

Mr. Tom K. Richey, for Appellee.

McALISTER, J.—The El Rey Furniture Company brought an action against Frank J. Kuckem for rent and the foreclosure of a landlord's lien, and the Buerger Brothers Supply Company, a corporation, intervened. Judgment was rendered for the plaintiff and from it and the order denying a new trial the intervener appeals.

The case is brought here on an agreed statement of facts and sufficient of these are given to enable one to understand the issues presented by the appeal. On May 9, 1927, Frank J. Kuckem and his wife, operators of a barber shop and beauty parlor in Tucson, executed and delivered to Frank W. Sharman of the same place a chattel mortgage on their shop and beauty parlor equipment as security for their note of that date in the sum of $3,000, payable one year thereafter. The mortgage was promptly recorded. The defendant, being unable to pay the note when it became due, borrowed $3,000 from the intervener on

October 26, 1928, and with it satisfied the obligation to Sharman who thereupon assigned the note and mortgage to the intervener, the Buerger Brothers Supply Company. About two years and a half later, that is, shortly after April 21, 1931, Kuckem moved his shop and beauty parlor, including all the equipment mentioned in this mortgage, to 31 North Sixth Avenue, Tucson, and on May 1st, following, signed a lease for the premises with Groves-Bryant, Inc., Home Furnishers, for a period of three years and ten months from that date, but very soon thereafter the latter transferred and assigned the lease to the plaintiff, the El Rey Furniture Company, which then became and during all the time mentioned herein remained the lessor of Kuckem. About seven months after this, to wit, on November 20, 1931, Sharman, notwithstanding the fact that he had, more than three years prior thereto, assigned the mortgage of May 9, 1927, to the intervener, released it of record at the request of Kuckem. Upon learning of this release a few days later the intervener did two things to avoid its effect: First, it took from Kuckem and his wife a new chattel mortgage, dated December 26, 1931, for $4,135.95 on the equipment covered by the Sharman mortgage, this sum being made up of the $3,000 in that mortgage and of $1,135.95 due Buerger Brothers by Kuckem on an open account; and, second, caused to be recorded on January 2, 1932, the assignment to it of the Sharman mortgage. Three weeks later, or on January 23, 1932, the Kuckems executed another chattel mortgage to the intervener for the sum of $2,645, to secure it for advances to him to enable him to pay other creditors, and upon this there was advanced $785.44.

Kuckem had been unable to pay his rent for some months, so on May 12, 1932, the El Rey Furniture Company filed this action, No. 14238, against him to

collect the amount then due and to foreclose its landlord's lien on the property he had placed on its premises, including that covered by the two mortgages of December 26, 1931, and January 23, 1932. Just twelve days later, that is, on May 24th, the intervener filed an action against Kuckem and wife, No. 14268, to foreclose these mortgages and made the El Rey Furniture Company a party defendant. The Kuckems did not appear in either suit, but the El Rey Furniture Company answered in the latter, and that case is now pending. On July 8th, following, the Buerger Brothers Supply Company, through leave of the court, intervened in cause No. 14238 and in its complaint set up the Sharman mortgage of May 9, 1927, claiming the lien thereof to be superior to that of the landlord, and prayed for its foreclosure. The El Rey Furniture Company answered by alleging that there was another action pending, No. 14268, *supra,* in which the recovery, the debt and the relief sought were the same as that set up in the complaint in intervention, and in addition that the Sharman mortgage relied on in the latter had been satisfied by the intervener and was no longer in force and effect. To this the intervener replied denying that this mortgage had been satisfied by it and averring that it had been released of record by Sharman acting wholly without its authority.

Under these facts the court, sitting without a jury, rendered judgment as follows: First, that the plaintiff recover from Kuckem its delinquent rent; second, that its landlord's lien was a first and prior claim; third, that the suit in intervention to foreclose the Sharman mortgage of May 9, 1927, was barred because there was pending when it was commenced an action by the intervener against Kuckem and wife to foreclose its chattel mortgage of December 26, 1931.

The intervener appeals from this judgment and assigns as error the following rulings: First, that the intervener lost its rights by failing to record its assignment of the chattel mortgage; second, that the taking of a new mortgage on the same property destroyed any rights the first mortgage may have given; and, third, that appellant was barred as intervener in the present action because there was pending at the time its complaint in intervention was filed another action between the same parties praying for the same relief, namely, cause No. 14268, commenced May 24, 1932, for the purpose of foreclosing the chattel mortgage of December 26, 1931.

The record does not disclose that the court ruled specifically that the intervener lost its rights in the Sharman mortgage by its failure to record its assignment, and the conclusion it reached does not necessarily imply that it felt this to be true, but in the view we take of the matter it is necessary to determine what effect that omission had upon the rights of the assignee, because no further consideration of the matter is called for if they were so vitally affected by it as the appellant contends the court held they were. The intervener's position is that the rule announced in 11 C. J. 664, paragraph 415, as the one prevailing in most jurisdictions, namely, "that the filing or recording of an assignment of a chattel mortgage is not, in the absence of a statute requiring it in express terms or by necessary implication necessary in order to protect the rights of the assignee," applies in Arizona because there is in this state no statute requiring "in express terms or by necessary implication" that assignments of chattel mortgages be recorded. While it is true that no statute of this state contains an express provision of this character, yet it was held by this court in *Newman* v. *Fidelity*

*Savings & Loan Assn.*, 14 Ariz. 354, 128 Pac. 53, 55, that the language of paragraphs 735, 1135 and 1136 of the Revised Statutes of 1901, which appear in the Code of 1928 as sections 960, 849 and 850, respectively, indicate conclusively that it is the policy of the law of this state "that assignments of mortgages must be recorded as instruments affecting real estate in order to protect the holder of such assignment against subsequent purchasers without notice." And this, we still feel, is the proper construction of these provisions, and it is not made any the less so by the fact that a negotiable note passes by indorsement and delivery and carries with it the mortgage collateral thereto. 5 R. C. L. 442, par. 76. While it is true that one who becomes a *bona fide* holder of a negotiable note before maturity takes it clear of all equities, yet "when a note," to use the language of *Newman* v. *Fidelity Savings & Loan Association, supra,* "is secured by a mortgage not assigned of record, where the registration laws require such recording, in order to import notice, and the mortgagee thereafter discharges it of record, and the property is purchased or money loaned thereon, by third persons relying upon such discharge, secured by a later mortgage or conveyance, the lien of such later mortgage or conveyance will take priority over the lien of the older mortgage." A number of authorities are cited in support of this statement.

Such being the law, the question arises whether the El Rey Furniture Company became a subsequent purchaser or lienholder of the barber shop and beauty parlor equipment of the defendant, Kuckem. The mortgage to Sharman was assigned to the intervener October 26, 1928, but remained on the record in the name of the former as mortgagee until November 20, 1931. Hence, it was unreleased on May 1, 1931, when Kuckem signed a lease for the premises at 31

North Sixth Avenue, Tucson, into which he had moved his equipment a few days prior. The lien of the intervener was in existence, therefore, when that of the landlord's began, and appellee admits that it continued as a first claim for seven months, or until November 20, 1931, when the record was made to read that Sharman, the mortgagee, had been paid and released his mortgage. The moment this occurred, appellee contends, the landlord's lien stepped up, by operation of law, to the position of a first lien. If this act of Sharman may be said to have brought about such a result, the judgment of the lower court was correct and must be affirmed.

Is the position of appellee, as applied to the facts of this case, sound? In answering this a proper appraisal of these two factors is important: First, the mortgage was satisfied by one who had long since parted with his interest in it and, therefore, had no right or authority whatever to release it; and, second, the El Rey Furniture Company, or its predecessor, entered into the lease agreement with Kuckem charged with notice of the fact that a mortgage lien on his equipment then existed. It was, of course, immaterial to appellee whether Sharman, the mortgagee of record, or someone else, owned the first lien on the equipment the defendant was moving into its premises, the fact necessary to constitute constructive notice thereof being present, namely, the disclosure of its existence by the proper record. Release by the intervener, the holder and owner of the first lien, would, of course, have terminated it and resulted necessarily in the second lien's becoming first; but a release of that lien by a person having no right or authority whatever to release it would not end it, or in our view affect it to such an extent that a lien which came into existence later but prior to its

unauthorized satisfaction would advance to first place. The lease agreement which created the second lien was executed by appellee with knowledge that the equipment the defendant was placing in its premises was encumbered and in consequence not answerable first for a claim for rent. Hence, it was in no sense deceived or misled as to the condition of the defendant's title to the property when it executed the lease and accepted him as a tenant; in fact, it became his landlord knowing that its claim thereon for rent would not only be second but remain so until the mortgage then on record covering the equipment had been paid off. The fact that this mortgage might be released of record by one wholly without authority or anyone else, before the obligation it secured should be discharged, had no part whatever in bringing about the lease agreement; hence, the happening of such an event could have given appellee no right as against appellant it did not possess prior thereto.

If the record had disclosed at the time the lease was entered into that the mortgage had been released by the mortgagee of record, even though he had long since parted with his interest in it by assigning it to another, law and justice would both demand that its lien be declared prior to appellant's and protected, because in that event the inference would be inescapable that the failure to record its assignment and make the true situation appear upon the proper public record had led appellee to accept defendant as a tenant thinking his equipment free from encumbrance and that its lien for rent would be a first claim against it. *Newman* v. *Fidelity Savings & Loan Association, supra.* But the fact that its neglect to place this instrument of record would have given its lien priority had the record disclosed when it attached that the mortgage had been satisfied, does not

signify that it had the effect of setting aside an existing lien and permitting one acquired later but with knowledge that the other existed, to step above that other to first place. While the failure to record the assignment was negligence for which appellant would have been responsible to any who may have suffered from it, yet, the fact that it did not anticipate that Sharman, who it knew had no right whatever to release the mortgage, would attempt to do so and, as a result of its failure to realize this, did not by recording its assignment protect itself against the consequences of such an act, could have no effect other than to render its lien second to any that might have attached during the period the record disclosed the property was free from encumbrance, that is, between November 20, 1931, the date of the release, and January 2, 1932, the day the assignment was recorded. And inasmuch as the landlord's lien did not attach during this period and appellee could not, when it entered into the lease agreement with the defendant, have been misled by the fact that the assignment was not on record, the unauthorized release of the Sharman mortgage after this lien had been initiated gave it no advantage whatever over appellant's which had been in existence for more than four years. *Geib, Admr., v. Reynolds*, 35 Minn. 331, 28 N. W. 923. The lien of each still retained the position it took when it began. Any other construction of the facts shown by the agreed statement would be giving effect to the rule—the termination of a first lien by release or otherwise makes the second one first—when the conditions out of which it grew are not in the case.

The other action taken by the Buerger Brothers Supply Company to avoid the effect of the unauthorized release of the Sharman mortgage was to accept from the defendant and his wife a new note

secured by a new mortgage on the same property, and the second assignment is that the court erred in ruling that by doing this it lost and abandoned the lien of the Sharman mortgage. The contention of appellant is that the taking of the new note and mortgage had no effect whatever upon the validity of the old obligation or its security, for the reason that it is apparent that they were not given or accepted in payment or satisfaction of the obligation to Sharman, but for the purpose of avoiding whatever injurious effect the unauthorized release of that mortgage might have had on its lien therein. Undoubtedly, appellant did not realize what this might be and as a matter of precaution took the new note and mortgage as evidence of the fact that his debt and the security therefor had not been paid but still existed. Before its action in this respect could have the effect of extinguishing the old note and mortgage it must be clear that such was the intention of the parties and this must be made to appear by something more than the mere act ·of substituting the new obligation and security for the old. The record, however, is wholly lacking in proof of this character, though the fact that the old note and mortgage were not surrendered upon the execution and delivery of the new but were retained by the intervener and the assignment thereof placed of record shortly thereafter indicates strongly that the parties entertained no such intention. Such being the condition of the record, the following authorities, among many others, uphold the contention of appellant: *Howard* v. *First Nat. Bank,* 44 Kan. 549, 24 Pac. 983, 10 L. R. A. 537; *Cameron* v. *Carson,* (Tex. Civ. App.) 249 S. W. 526; *Alferitz* v. *Ingalls,* (C. C.) 83 Fed. 964; *Bank of Duplin* v. *Hall,* 203 N. C. 570, 166 S. E. 526; *Megown* v. *Fuller,* 38 Wyo. 211, 266 Pac. 124, 268 Pac. 189;

*Adams-Burks-Simmons Co.* v. *Johnson,* 51 Tex. Civ. App. 583, 113 S. W. 176; *Hobkirk* v. *Walrich,* 14 Colo. App. 181, 59 Pac. 414; *Hill* v. *Beebe,* 13 N. Y. 556, 564; *Stockgrowers' Finance Corp.* v. *Hildreth,* 30 Ariz. 506, 249 Pac. 71. In *Rath* v. *Ponsor,* 114 Kan. 370, 219 Pac. 285, the court uses this language:

"The taking of a new note and mortgage although accompanied by a surrender of the old ones, would not of itself amount to a payment or discharge of the lien (*Howard* v. *First National Bank,* 44 Kan. 549, 557, 24 Pac. 983, 10 L. R. A. 537, and cases there cited) and the fact that the later mortgage secured an additional debt and covered additional property does not change the rule in this regard."

In *Austin* v. *Bailey,* 64 Vt. 367, 24 Atl. 245, 246, 33 Am. St. Rep. 932, the court says:

"But the taking of a new note in substitution for one secured by mortgage does not extinguish the debt evidenced by the latter so as to discharge the mortgage, unless such was the intention of the parties, shown by something besides what arises from the mere act of substitution; and the reason is that the mortgage secures the debt, not merely the evidence of it; and, as a change in the evidence does not pay the debt, the lien of the mortgage is not affected by it. [Citations.]

"Nor does the taking of a second mortgage on the same property to secure the substituted note operate to discharge the first mortgage, unless such was the intention of the parties. [Citations.] Nor the inclusion of an additional demand in the substituted note. That may serve to show the purpose of the transaction, but it does not show an intention to discharge the prior mortgage. [Citations.] . . .

"It follows, therefore, that the taking of the new note and mortgage was not in law a discharge nor an abandonment of the first mortgage."

In 5 R. C. L. 456, paragraph 91, is found the following language:

"The taking of a second mortgage to secure the same debt secured by a first mortgage upon the renewal of a note secured by the first mortgage and upon the same property does not operate as a satisfaction and release in law of the first mortgage."

In 11 C. J. 683, paragraph 460, appears this statement:

"A junior mortgagee does not acquire any vested right in the contract between the mortgagor and a prior mortgagee so as to preclude them from making changes therein."

In *Evans* v. *Colorado Savings Bank,* 41 Ariz. 504, 19 Pac. (2d) 1062, this court held that a note given for a prior indebtedness is not payment of that indebtedness unless it was agreed that it should be. and stated specifically that the retention of a note as partial security is conclusive evidence that it was not intended that the taking of the new would cancel the old note or satisfy the debt which it evidenced.

We have been directed to no authority holding the opposite view, though appellee cites the following excerpt from 5 R. C. L. 441, paragraph 74, in support of its contention that by substituting a new mortgage in the sum of $4,135.95, a part of which, $3,000, was a renewal of the amount secured by the Sharman mortgage, the remainder covering an open account, appellant waived and lost the lien of that mortgage: "One cannot claim as assignee of a mortgage where the mortgage is by the parties substituted for a new mortgage on the same property, as such act suffices to cancel the old mortgage." The authority upon which this statement is based is the case of *Herr* v. *Denver Milling & Mercantile Co.,* 13 Colo. 406, 22 Pac. 770, 6 L. R. A. 641, but a reading of the opinion in that cause discloses that it does not depart from the view that the taking of a new note or mortgage does not extinguish the old one unless the evidence

discloses that such was the intention of the parties at the time. Neither the fact that appellant was the assignee of the Sharman mortgage when it took the renewal, nor that the latter secured an additional debt changed the rule in this respect. *Rath* v. *Ponsor, supra.*

Inasmuch, therefore, as neither the failure to record the assignment nor the taking of a renewal note and mortgage affected the status of appellant's lien, the holding by the trial court that the landlord's is prior, senior and superior to that of the intervener and the order that it be foreclosed as such were erroneous.

The court held that the suit by Buerger Brothers Supply Company, intervening in cause No. 14238 was barred, because the action instituted by it against Kuckem on May 24, 1932, to foreclose the mortgage of December 26, 1931, covering the $3,000 advanced to Kuckem, was pending at the time it was filed. This holding forms the basis for the third and last assignment of the appellant. This ruling was made pursuant to section 3777, Revised Code of 1928, which provides that the objection that another action between the same parties for the same cause is pending "may be taken by answer in abatement or in bar of the action" when that fact does not appear on the face of the complaint. The pendency of cause No. 14268 was disclosed in the answer of appellee, not in the complaint of the intervener, but the two actions were not inconsistent and, this being true, the filing of the first suit did not constitute an election of remedies and render necessary that the court bar the second one when it was requested by the appellee. 20 C. J. 9, par. 8; *American Process Co.* v. *Florida White Pressed Brick Co.,* 56 Fla. 116, 47 So. 942, 16 Ann. Cas. 1054; *Barth* v. *Loeffelholtz et al.,* 108 Wis. 562,

84 N. W. 846. "The first suit commenced, in point of time," to use the language of *Dowdy* v. *Calvi*, 14 Ariz. 148, 125 Pac. 873, 875, "controls, and, when the remedies are inconsistent, such prior suit is an election of remedy and prevails." The fact that an action, which forms merely a consistent or concurrent remedy, is pending when the second one is filed, does not bar the second action. 20 C. J., par. 18. At best it could have the effect of abating it only, but this was not the relief sought or given. Hence, the order barring cause No. 14238 merely because No. 14268, between the same parties seeking the same relief was pending, should not have been made.

The judgment is reversed and the cause remanded with direction to the trial court to take such action as the views expressed herein require.

ROSS, C. J., and LOCKWOOD, J., concur.