Eugene J. CRAIG, Trustee in Bankruptcy for Lynn George Garrison, Bankrupt No. 60964, Appellant (Plaintiff below),

v.

Claire J. GUDIM et al., Appellees (Defendants below).

No. 3960.

Supreme Court of Wyoming.

Aug. 24, 1971.

Gerald R. Mason, of Sievers & Mason, Pinedale, for appellant.

James A. Tilker, of Kline, Tilker & Lynch, Cheyenne, Robert B. Ranck, of Simpson, Kepler, Simpson & Ranck, Jackson, for appellees Gudim.

Floyd R. King, of King & Mackey, Jackson, for appellee The Jackson State Bank.

No appearance for appellee Farmers Home Administration.

Before McINTYRE, C. J., and PARKER, McEWAN, and GRAY, JJ.

Chief Justice McINTYRE delivered the opinion of the court.

Eugene J. Craig, trustee in bankruptcy for the creditors of Lynn Garrison, sued Mr. and Mrs. Claire Gudim and The Jackson State Bank, Jackson, Wyoming, to collect a balance of proceeds on a building contract. Garrison, as contractor, had built a home for the Gudims. Funds to pay for construction costs had been deposited with The Jackson State Bank, and the bank claimed Garrison had assigned to it all moneys due on his construction contract.

The trustee's complaint alleged there was due to the bankrupt, Garrison, the sum of $5,559.89; that this sum was on deposit with the bank in a joint account of the Gudims and Farmers Home Administration; that the bank claimed a security interest in the account; and that the bank's security interest had not been perfected and was void as against the trustee.

The bank's answer admitted the deposit as alleged and that the bank claimed an interest in the account. The bank then alleged Garrison had assigned to it all moneys due or to become due under the terms of a contract made by and between Garrison and the Gudims; and that all moneys due under such contract were due and payable to the bank.

The trial court found the bank had an absolute right to the funds on deposit, by virtue of its assignment, subject only to an offset of $1,475 on the part of the Gudims for damages stemming from a delay in completion. Judgment was entered for the bank and for Mr. and Mrs. Gudim. Craig, the trustee in bankruptcy, has appealed.

*The Assignment*

The Gudims had arranged for a loan from the Farmers Home Administration for the building of their home. The construction contract between them and Garrison was on a form supplied by Farmers Home Administration but the government agency was not a party to this contract. It was between the owners and the builder. One of the provisions of the contract was that partial payments would be made each two weeks in the amount of 60% of the value of the work completed. All estimates were to be approved by the owners and the lending agency, and likewise final acceptance upon completion was to be by both the lender and borrowers.

Funds to pay for the work as it was accomplished were deposited in The Jackson State Bank and a deposit agreement was executed by the borrowers, by the lending agency and by the bank. Garrison was not a party to this agreement. It was provided in the deposit agreement that funds could be withdrawn only on the order of the borrowers with a counter-signature of the lending agency; or upon written demand of the lending agency the balance on hand was to be paid as demanded. The bank agreed not to assert any right of offset except for service charges.

Two months after the construction contract and the deposit agreement were executed, the bank loaned Garrison $6,000 and took from him an instrument entitled AS-SIGNMENT OF CONTRACT TO SE-CURE BANK LOAN. The purported assignment is on a form which has the bank's name and address printed. The form indicates it was intended for use when an assignor had a contract with the Department of Agriculture, United States Forest Service. We are attaching as an appendix, at the end of this opinion, a copy of the assignment contract.

According to the language used in the assignment, Garrison assigned and transferred to The Jackson State Bank all moneys due or to become due to the assignor under the terms of "contract #5920997814 made by and between the Assignor and the Department of Agriculture, Farmers Home Administration," as collateral security for whatever was owed by Garrison to the bank.

Although the loan number, for the loan being made to Mr. and Mrs. Gudim, was the number used in the assignment, it does not appear it was a number which identified any particular contract or instrument connected with the Gudim loan. Supposedly, according to the assignment, moneys were assigned which became due under a contract between Garrison and Farmers Home Administration. However, there was no contract between those parties.

The bank's answer to plaintiff's complaint alleges an assignment of a contract between Garrison and Mr. and Mrs. Gudim. There has been no showing of any assignment with respect to the construction contract between those parties. Our concern therefore becomes this: Can we say Garrison intended to assign moneys due under his construction contract with Gudims and the bank intended to take such assignment? If so, can we then read and interpret the assignment given as if every reference to Department of Agriculture, Farmers Home Administration, would be understood to mean Claire J. Gudim and Thelma E. Gudim?

We adhered to the following rule in Chandler-Simpson, Inc. v. Gorrell, Wyo., 464 P.2d 849, 851: Where the terms of a contract taken as a whole are plain and unambiguous, the meaning of the contract is to be deduced from its language alone; and where the language is ambiguous, the intent of the parties may be searched out by resort to extrinsic inquiry.

In the instant case the language used is clear and unambiguous. There is no doubt about what has been said. However, it would appear there was a mutual mistake in the description of what was assigned. In the absence of amendment or reformation prior to the acquiring of rights by other parties, it would be difficult for us to make the assignment in question apply to moneys due under the construction contract between Garrison, the assignor, and the Gudims, who were the parties obligated to pay all construction costs.

## The Commercial Code

Although the parties in this litigation joined issue on the validity of the assignment claimed by The Jackson State Bank, it appears they concerned themselves primarily with the question of whether the bank's assignment was subordinate to rights of the trustee in bankruptcy because the bank did not take steps to perfect its security interest by filing a financing statement as required by § 34–9–302, W.S.1957, 1971 Cum.Supp.

The bank admits it did not file a financing statement or take steps to perfect its security interest. It contends it did not have to do so because of exceptions in the commercial code. Disregarding then for the moment the question of whether the assignment to The Jackson State Bank is void for uncertainty, we look to the exceptions claimed by the bank to see whether a valid assignment should have been perfected as a security interest in order to preserve the assignee's priority over other creditors of the assignor.

Section 34–9–104, W.S.1957, 1971 Cum. Supp., provides the commercial code article

shall not apply in certain instances. The only subsections of possible concern would be (i) and (k). The former pertains to any right of set-off. It cannot benefit the bank because the deposit involved was made by Gudims and Farmers Home Administration. The bank has no set-off against either of these parties, and it agreed in its deposit agreement to assert no right of offset except service charges. The deposit was not owned or controlled by Garrison and therefore no right of set-off is involved.

Subsection (k) pertains to a transfer of any deposit maintained with a bank. Since the deposit we are concerned with was not maintained, owned or controlled in any manner by Garrison, it cannot be said the assignment from him transferred the deposit. Therefore (k) gives the bank no exception.

We look next at § 34–9–305, W.S.1957, 1971 Cum.Supp. It provides that a security interest is perfected by possession under certain circumstances. The section is not very clear as to what security interests are intended to be affected. However, it is clear the bank did not have possession of the Gudim-Farmers Home Administration deposit within the meaning of this section.

It is said of "possession" in 72 C.J.S. Possession p. 233, that it denotes custody coupled with a right or interest of proprietorship; and "possession" is inclusive of "custody," although "custody" is not tantamount to "possession." With respect to deposits in a bank, it is said in 9 C.J.S. Banks and Banking § 267, p. 544, the term "deposit" has a well accepted meaning in the banking business and has been defined as the act of placing money in the "custody" of a bank, to be withdrawn at the will of the depositor.

The Jackson State Bank had nothing more than a custody with respect to the deposit made by the Gudims and their lender. The bank's assignment authorized and directed the Department of Agriculture, Farmers Home Administration, to pay by check drawn to the order of the bank

money due to Garrison. Even if we construed the instrument to mean Gudims should make such payments, with the approval of Farmers Home Administration, it still would take a check from the Gudims, with a counter-signature of the mortgagee, to transfer possession of any part of the deposit to the bank.

The only other exception relied on by the bank as an excuse for not perfecting the security interest claimed by it is that contained in § 34–9–302(1) (e). Insofar as pertinent here, this section provides a financing statement must be filed to perfect all security interests, *except* an assignment of contract rights which does not transfer a significant part of the outstanding contract rights of the assignor.

The only evidence having to do with other outstanding contract rights of Garrison indicated he at one time had a contract to purchase a vacant and unimproved lot in North Ogden, Utah. Installment payments were made for a time. The testimony, however, discloses that payments were discontinued, taxes were not paid, and apparently all rights were abandoned.

Counsel for the bank states no evidence was introduced to show that the bank's assignment transferred a significant part of the outstanding contract rights of Garrison. Counsel for the trustee counters by saying, if the bank wishes to rely on the exception in (e) of § 34–9–302(1), the burden is on it to show that the assignment *did not* transfer a significant part of the outstanding contract rights of Garrison.

Of course the negative of a proposition, such as the non-existence of other contract rights, would be difficult to prove. On the other hand, if other contract rights did exist, proof of that fact would be available. There would be good reason then for saying the bank should come forward with proof, if Garrison actually had substantial contract rights besides the rights supposedly assigned to the bank.

■ Suffice it to say for purposes of our decision, however, a party relying upon an exception has the burden of proof in connection therewith. Takahashi v. Pepper Tank & Contracting Co., 58 Wyo. 330, 131 P.2d 339, 351. In the absence of proof to the contrary, we will assume the contract rights assigned by Garrison to the bank, if any were in fact assigned, transferred all or at least a significant part of the outstanding contract rights of the assignor.

In the light of what has been said up to this point, we must conclude The Jackson State Bank had no priority of lien against the deposit of $5,559.89 and that judgment should have been in favor of the trustee in bankruptcy insofar as The Jackson State Bank is concerned.

### Liquidated Damages

The construction contract between the owners and the builder provided for the house to be completed by December 31, 1965. In the event it was not completed on time, it was agreed the contractor might be required to pay the owners $25 as liquidated damages for each calendar day of delay. The trial court found the house was not completed until February 28, 1966, or 59 days after the agreed completion date.

We find the evidence quite weak on both sides as to the date of substantial completion. However, there was sufficient evidence for the court to find construction was not completed until February 28, 1966. When viewed by Mr. Gudim on December 31, 1965, the house lacked flooring, inside trim, a chimney and storm windows.

Garrison testified the reason he did not finish the storm windows was that the company which was to supply them did not do so and he could not obtain them locally. Apparently, however, he did nothing to protect himself from the penalty for delay caused thereby. Also, the construction contract provided for inspection by a representative of the Farmers Home Administration; and final payment was to be made when acceptance by the owners and the mortgagee had taken place.

The evidence indicates Farmers Home Administration considered the house completed March 1, 1966, and there is nothing to show that Garrison sought an earlier acceptance by the representative responsible for a final inspection. We will therefore not disturb the trial court's finding of a delay of 59 days in the completion. The offset of $1,475 for Mr. and Mrs. Gudim is affirmed.

Although a number of additional assignments of error were asserted by appellant, we find no need to discuss any of them in view of our holding that The Jackson State Bank did not have a prior lien on the $5,559.89 deposit and that the Gudim offset was proper.

Judgment reversed as to The Jackson State Bank and affirmed as to Claire J. Gudim and Thelma E. Gudim.

## APPENDIX

ASSIGNMENT OF CONTRACT TO SECURE BANK LOAN

**DEFENDANT'S EXHIBIT**
_Bank_
NO. _1_

KNOW ALL MEN BY THESE PRESENTS:

FOR VALUE RECEIVED, the undersigned (hereinafter referred to as the "Assignor") hereby:

1. Sells, assigns, and transfers to THE JACKSON STATE BANK, JACKSON, WYOMING, (hereinafter referred to as the "Bank") all moneys now due or to become due to the Assignor under the terms of contract #5920997814 _____ made by and between the Assignor and the Department of Agriculture, ~Farmers Home Administration ~~XXXXXXXXXXXXXXXXXX~~ as collateral security to any and all liabilities and obligations of the Assignor to the Bank, and claims of the Bank against the Assignor, whether now existing or hereafter held or acquired by the Bank, absolute or contingent, matured or not matured.

2. Authorizes, empowers, and directs the Department of Agriculture, Farmers Home Administration ~~XXXXXXXXXXXXXXX~~, to pay to the Bank by check drawn directly to the order of the Bank, any and all moneys due or to become due to the Assignor by virtue of said Assigned Contract.

3. Irrevocably constitutes and appoints the Bank as his lawful attorney-in-fact, to ask for, collect, demand and receive, to prosecute and sue for, by proceedings or otherwise, in any court of law or equity, to give acquittances for, all or any part of moneys due or to become due under said Assigned Contract.

IN WITNESS WHEREOF, the undersigned has caused these presents to be properly executed this ___12___ day of ___November___, 196_5_.

Cedar Log Homes

by _Lynn G Garrison_

The State of Wyoming
County of Teton

On this ___12___ day of _November_, 196_65_, before me personally appeared

___Lynn Garrison___

to me known to be the person described in and who executed the foregoing instrument, and acknowledged that ___he___ executed the same as ___his___ free act and deed.

Given under my hand and seal the date first above written.

My commission expires ~~January 21, 1966~~

_____
Notary Public

[A4425]