**SOUTHVIEW CORPORATION, Appellant,**

v.

**KLEBERG FIRST NATIONAL BANK**
**et al., Appellees.**

No. 863.

Court of Civil Appeals of Texas,
Corpus Christi.

June 20, 1974.

William R. Anderson, Jr., Sorrell, Anderson & Sorrell, Corpus Christi, for appellant.

Nelson R. Sharpe, Glusing & Sharpe, Kingsville, Shelby A. Jordan, Wood, Burney, Nesbitt & Ryan, Corpus Christi, for appellees.

OPINION

NYE, Chief Justice.

This is a garnishment case. Southview Corporation filed a garnishment action against the Kleberg First National Bank claiming funds on deposit in said bank.

Stonewall Bank intervened in the garnishment contending that two certificates of deposit, represented by the garnishee bank as deposits, were not subject to garnishment since Stonewall Bank had perfected a security interest therein and that such security interest had priority over the asserted garnishment lien. The case was tried to the court without a jury. The trial court entered judgment denying Southview's claim to the certificates of deposit. The findings of fact filed by the trial court are not contested by Southview Corporation.

The Kleberg First National Bank issued two certificates of deposit to Bishop Mobile Homes, Inc. Thereafter Bishop assigned these certificates of deposit to Stonewall in exchange for the release by Stonewall of certain mobile home titles held by Stonewall as security for debts than owing to it by Bishop. Stonewall took possession on the certificates of deposit pursuant to this assignment and a security agreement and maintained possession of the certificates of deposit until ordered to deliver them into the registry of the court.

Southview Corporation was the assignee of a judgment against Bishop. In order to attempt collection on the judgment Southview filed an application for writ of garnishment by which it sought funds held by the Kleberg First National Bank which belonged to Bishop. Kleberg Bank admitted that it was indebted to Bishop and tendered $140.43 into the court and answered that it had previously issued two certificates of deposit in the sum of $1,000.00 each to Bishop Mobile Homes. The garnishee bank informed the court that the original certificates of deposit were believed to be in the possession of Stonewall Bank. The original hearing of the garnishment suit was then recessed for the purpose of issuing a subpoena duces tecum ordering the Stonewall Bank to produce the two certificates of deposit. The court further ordered the

issuance of a citation directed to Bishop. Bishop, although duly cited, failed to appear and wholly defaulted. The original certificates of deposit were admitted into evidence and leave was granted to Stonewall Bank to intervene in the suit.

Trial was had without the intervention of a jury resulting in a judgment for Southview in the amount of $140.43 and denial of its claim to the two certificates of deposit. The trial court filed findings to the effect that Bishop had assigned the certificates of deposit to Stonewall in exchange for the release of certain mobile home titles that had been held as security for debts then owing to Stonewall by Bishop; that at the time of the assignment, a security agreement was executed listing the certificates of deposit as collateral; that Stonewall took possession of certificates of deposit and maintained exclusive possession until they were deposited into the registry of the court; and that the terms of the security agreement entitled Stonewall to endorse the certificates of deposit as agent for Bishop and that the needed endorsement was provided by Stonewall.

The appellant asserts two points of error arguing that Southview's garnishment lien on the funds represented by the certificates of deposit were not subordinate and inferior to the possessory security interest of Stonewall. Additionally, the appellant contends that the trial court erred in concluding that the certificates of deposit do not come within the exclusion provision of Chapter 9 of the Texas Business and Commerce Code, V.T.C.A.

Appellant asserts that a certificate of deposit is a transaction specifically excluded from Chapter 9 of the Texas Business and Commerce Code. It argues that a security interest cannot be perfected in a certificate of deposit since Code § 9.104(11) provides:

"This chapter does not apply . . . (11) to a transfer in whole or in part of any of the following: any claim arising out of tort; *any deposit,* savings, pass-

book or like account maintained with a bank, savings and loan association, credit union or like organization." (Emphasis added.)

Appellant argues that there are various reasons for the exclusions of the transactions listed under § 9.104. For instance, under this section in comment 7 it states:

"7. Rights under life insurance and other policies, and deposit accounts, are often put up as collateral. Such transactions are often quite special, do not fit easily under a general commercial statute and are adequately covered by existing law."

Continuing, the appellant asserts that a certificate of deposit is a "deposit maintained with a bank" and is defined in Chapter 3 on commercial paper as "an acknowledgment of a bank of receipt of money with an engagement to repay." Appellant says that although the word "deposit" is not used in defining this term, this, of course, does not preclude it from being a deposit in the bank.

■ Section 3.104 of the Uniform Commercial Code reads in part as follows:

"§ 3.104 Form of Negotiable Instruments; 'Draft'; 'Check'; 'Certificate of Deposit'; 'Note' . . . (b) A writing which complies with the requirements of this section is . . . (3) a 'certificate of deposit' if it is an acknowledgment by a bank of receipt of money with an engagement to repay it; . . . (c) As used in other chapters of this title, and as the context may require, the terms 'draft', 'check', 'certificate of deposit' and 'note' may refer to instruments which are not negotiable within this chapter as well to instruments which are so negotiable."

Therefore, under the Commercial Code, a certificate of deposit constitutes a form of "instrument" which may or may not be negotiable. As applicable to the case at bar, Code § 9.105 reads as follows:

"§ 9.105 Definitions and Index of Definitions

(a) In this chapter unless the context otherwise requires:

(7) 'Instrument' means a negotiable instrument (defined in Section 3.104) . . . or any other writing which evidences a right to the payment of money and is not itself a security agreement or lease and is of a type which is in ordinary course of business transferred by delivery with any necessary indorsement or assignment;"

Thus, the classification of a certificate of deposit as an instrument in § 3.104 is made applicable to Chapter 9 of the Code.

■ In the First National Bank of Farmersville v. Greenville Nat. Bank, 84 Tex. 40, 19 S.W. 334 (1892), our Supreme Court said the following about certificates of deposit:

"It has frequently been said that certificates of deposit have most of the characteristics of promissory notes, and this seems to be true; but a paper, to be entitled to the force and effect which paper of those classes has, whether negotiable or nonnegotiable, must contain a promise 'in writing by one person to pay another person therein named, or to his order, or to bearer, a specified sum of money, absolutely and at all events.' Daniel, Neg.Inst. 28. A paper not having those characteristics cannot be a *certificate of deposit* or promissory note." (Emphasis supplied.)

This leads us to believe that a certificate of deposit is a form of a promissory note issued by a bank.

The promissory note theory of certificate of deposit has been incorporated into the Code as illustrated by the definition of a certificate of deposit: "[A] receipt of money with an engagement to repay it." Code § 3.104(b)(3). Following this definition of certificate of deposit, the Code makes such definition applicable to other

chapters which would necessarily include Chapter 9. Code § 3.104(c). In its usual and ordinary form, a certificate of deposit contains the elements of a promissory note, rather than of a mere receipt, and in general has that legal effect. 10 Am.Jur.2d Banks § 457 and cases cited therein.

In Howick v. Bank of Salt Lake, 28 Utah 2d 64, 498 P.2d 352, 11 U.C.C.Rep. 124, Utah Sup.Ct.1972, the concurring opinion recognizes that certificates of deposit are instruments and that Chapter 9 security interests may be perfected therein. The relevant issue to be tried on remand in Howick was whether the plaintiff was a holder in due course so as to take priority over an earlier chapter 9 security interest in the certificate of deposit. As was said in the concurring opinion:

> "The certificate of deposit, in the instant action, comports with the requirements of 70A-3-104(1), U.C.A.1953, and, therefore, may be deemed a negotiable instrument. The defendant, bank, claims a security interest therein. Under Section 70A-9-304(1), U.C.A.1953, a security interest in an instrument can be perfected only by the secured party's taking possession, with certain limited exceptions not applicable herein."

■ Section 9.102 of the Code defines the policy and scope of Chapter 9, and makes Chapter 9 applicable to any transaction which is intended to create an instrument. Thus, since a certificate of deposit is an instrument and since it takes on the characteristics of a promissory note, (as opposed to a mere receipt for a deposit account maintained with a bank), we hold that the exclusions contained in Code § 9.-104(11) do not include certificates of deposit. Therefore, a Chapter 9 security interest may be perfected in a certificate of deposit. See 68 Am.Jur.2d Secured Transactions § 168 at p. 1022.

In 1973 the Texas Legislature enacted (effective January 1, 1974) the 1972 amendments to the official text of the Uniform Commercial Code. The exclusions contained in § 9.104(11) were reworded in § 9.104(12) (Supp.1974) to read:

> "§ 9.104 Transactions Excluded From Chapter
>
> This chapter does not apply: . . . (12) to a transfer of an interest in any deposit account (Subsection (a)(5) of Section 9.105), . . ."

Thus, we must refer to § 9.105(a)(5) (Supp.1974) which reads:

> "§ 9.105 Definitions and Index of Definitions
>
> (a) In this chapter unless the context otherwise requires: . . . (5) 'Deposit account' means a demand, time, savings, passbook or like account maintained with a bank, savings and loan association, credit union or like organization, *other than an account evidenced by a certificate of deposit*; . . ." (Emphasis supplied.)

Appellant argues that this revised Code does not apply to the case at bar since this transaction occurred before the revision. Appellant argues that the revision is not merely a rewording but a change in the law. We disagree. The amendments which were effective January 1, 1974 apply in the case at bar. Section 11.108 provides:

> "§ 11.108. Presumption That Rule of Law Continues Unchanged
>
> Unless a change in law has clearly been made, the provisions of this title with 1973 amendments shall be deemed declaratory of the meaning of the title."

■ The rewording contained in Section 9.104(12) and 9.105(a)(5) (Supp.1974) did not change the prior law as to whether or not certificates of deposit were excluded from Chapter 9 of the Code. Certificates of deposit are instruments in which a security interest may be perfected. Appellant's points of error are overruled.

The judgment of the trial court is affirmed.