Ariel WORDEN and E. M. Hudspeth, Independent Co-Executors of the Estate of R. C. Mingee, Deceased, Appellants,

v.

Norman H. THORNBURG and First Savings Association of Corpus Christi, Appellees.

No. 1225.

Court of Civil Appeals of Texas, Corpus Christi.

March 31, 1978.

Rehearing Denied April 27, 1978.

Allan L. Potter, Potter & Potter, Corpus Christi, for appellants.

Charles R. Cunningham, Lee Mahoney, Mahoney, Shaffer, Hatch & Layton, Corpus Christi, for appellees.

## OPINION

YOUNG, Justice.

This is an action for declaratory judgment to determine ownership of a certificate of deposit bearing the notation "R. C. Mingee or Norman H. Thornburg" as depositor and representing $3,000.00 on deposit with the First Savings Association of Corpus Christi, Texas. In connection with the certificate, Mingee and Thornburg had signed as joint tenants an agreement with the Association providing for right of survivorship and for withdrawal on only one signature. Mingee later died. Thornburg thereafter made demand of the Association for the funds and was refused. This suit resulted.

After Thornburg filed suit against the Association, the Association impleaded Ariel Worden and E. M. Hudspeth as Independent Co-Executors of the Estate of Mingee. Whereupon the Executors filed a cross-action for the funds against Thornburg and the Association. Trial was to the court without a jury on stipulated evidence. The trial court rendered judgment that Thornburg, as surviving joint tenant of the account, was entitled to the funds on deposit. On the request of the Executors the trial court filed findings of fact and conclusions of law. The Executors appeal. We affirm.

On February 1, 1974, Mingee, who then lived in Corpus Christi, appeared alone at the Association and opened by deposit a savings account in his name and that of Thornburg, his nephew. Mingee then signed the signature card contract which provided for joint tenants with right of survivorship and received the certificate of deposit representing the account. That certificate is the one in controversy. Thereafter Mingee secured Thornburg's signature on the card and returned it to the Association. Sometime after the account was opened, Thornburg, who lived in Mississippi, acquired possession of the certificate.

On September 9, 1975, Mingee went to the Association and demanded withdrawal of the funds from the account. The Association denied his request because Mingee did not have in his possession, nor did he tender, the certificate. The bylaws of the Association required surrender of the certificate to effect a withdrawal from the account. Whereupon Mingee personally wrote to Thornburg demanding return of the certificate. Thornburg failed to comply with the request.

In late September of 1975, E. M. Hudspeth, a friend of Mingee and one of the Executors herein, called Thornburg and requested return of the certificate. On November 3, 1975, Mingee's attorney wrote a letter to Thornburg on Mingee's behalf requesting return of the certificate. Thornburg ignored all the requests.

Consequently, on November 5, 1975, Mingee requested the Association not to allow any withdrawals on the account. As a re-

sult the bank placed a "freeze order" on the account. On November 30, 1975, Mingee died. Then under Mingee's will Hudspeth and Worden qualified as independent co-executors of Mingee's estate. They are the appellants herein.

Appellants have brought forward 22 points of error. They have, however, summarized the points into categories for purposes of argument. We will follow appellants' format, generally, in considering their contentions.

In their first category appellants contend that the Association wrongfully refused to pay the funds to Mingee upon his demand during his lifetime and that, therefore, the trial court in its judgment should have awarded the funds to Mingee's Executors.

■ This case is in the nature of an interpleader action and the parties seeking the funds each has the burden of proving a prior right to the funds deposited with the court. *Celanese Coating Company, Devoe Paint Division v. Soliz,* 541 S.W.2d 243 (Tex. Civ.App.—Corpus Christi 1976, writ ref'd n. r. e.). In order to meet this burden, Executors had to prove initially that the Association was obligated to turn over the funds to Mingee when he requested them in September of 1975, and that the refusal was a breach of this obligation.

■ Executors contend that the Association's obligation arises both as a matter of law and as a matter of contract. They argue, first, that the obligation arises as a matter of law from the fact that the certificate was a non-negotiable instrument and thereby it did not require presentment for Mingee to be entitled to the funds upon his request unaccompanied by the certificate. Executors cite *First State Bank v. Hidalgo Land Co.,* 268 S.W. 144 (Tex.Comm'n App. 1925, opinion adopted) which discusses a standard for determining whether a certificate of deposit is negotiable or non-negotiable. While we would agree that the instant certificate was a non-negotiable instrument, Executors have cited us to no authority, nor have we found any, which obligates a savings institution to pay out funds on all deposits evidenced by a non-negotiable instrument where the depositor orally or in writing requests the funds without tendering the instrument itself.

■ Second, Executors argue that the obligation arises as a matter of contract. A non-negotiable certificate of deposit represents a form of promissory note. *Southview Corporation v. Kleberg First National Bank,* 512 S.W.2d 817 (Tex.Civ.App.—Corpus Christi 1974, no writ). As such, it represents a contractual relationship between the savings institution and the depositor. *Business Aircraft v. Electronic Communications, Inc.,* 391 S.W.2d 70 (Tex.Civ.App.—San Antonio 1965, writ ref'd n. r. e.).

■ In this regard, Executors contend that the bank was contractually obligated to turn over the funds because "nothing on the agreement or certificate indicates conditions other than signature for withdrawal." This argument is insufficient to demonstrate an obligation, though, for two reasons. First, the signature card contract provision to which the Executors refer provides: "one signature only required for withdrawal". This provision's clear design provides that of the two signatories on the signature card contract, only one will be required to sign when making a withdrawal. Second, the Executors had the burden to show the contractual provision which created the obligation the nonperformance of which would be a breach. *Hull v. Freedman,* 383 S.W.2d 236 (Tex.Civ.App.—Fort Worth 1964, writ ref'd n. r. e.); *Blackstock v. Gribble,* 312 S.W.2d 289 (Tex.Civ.App.—Eastland 1958, writ ref'd n. r. e.); *Mergenthaler Linotype Co. v. Herrmann,* 217 S.W.2d 122, 123 (Tex.Civ.App.—Fort Worth 1949, writ ref'd n. r. e.).

■ After reviewing the signature card contract with the Association together with the certificate, we find no provision in either which required payment of the funds on deposit solely upon written or oral request. Furthermore, the signature card contract provides that "the charter and by-laws of the Association as they now are or as they may hereafter be amended shall

govern this account." Executors produced no evidence of the provisions of the charter or bylaws as they existed at the time the account was opened. Consequently, we have no way of ascertaining the total contractual rights and obligations of the parties herein. The only evidence in the record pertaining to the charter or bylaws showed that the bylaws, as amended on January 16, 1975, one year after Mingee purchased the certificate, provided "any member shall be able to withdraw his savings deposit or savings account in whole or in part . . by presenting his deposit book or certificate of deposit." Executors have clearly failed to meet their burden of proving a contractual obligation. Appellants' contentions in their first category are overruled.

■ In the Executors' second category, they argue that Mingee's demanding the funds from the Association, "freezing" the savings account and his demanding the certificate from Thornburg destroyed the parties' unity of title and operated to terminate any joint tenancy with right of survivorship, leaving the parties as tenants in common with no right of survivorship. We disagree.

In considering the contention, we will show that regardless of who owned the funds used to purchase the certificate, a joint tenancy resulted; that Mingee's acts did not sever the joint tenancy; and that Mingee might have taken alternative actions to avoid the result of this case.

■ It is clear that a joint tenancy existed initially between Mingee and Thornburg regardless of which party owned the funds used to purchase the certificate. We will first assume that either Mingee or Thornburg separately owned all of the funds used to purchase the certificate. Under this assumption, the party contributing the money would be the "donor" and the noncontributing party the "donee-beneficiary". By taking out the certificate as a joint account with right of survivorship, the donor is deemed to have entered into a third party beneficiary contract with the Association. *Davis v. East Texas Savings & Loan Association,* 163 Tex. 361, 354 S.W.2d 926 (1962);

*Edds v. Mitchell,* 143 Tex. 307, 184 S.W.2d 823 (1945). This third party beneficiary contract created a joint tenancy with right of survivorship between the donor and third party beneficiary. *Calvert v. Wallrath,* 457 S.W.2d 376 (Tex.Sup.1970). In *Calvert* the court faced a situation involving one joint checking account and one joint savings account paid for solely by Mr. Wallrath. Mr. Wallrath then executed a joint tenancy with right of survivorship contract, similar to the one in the instant case, with his sister, Miss Wallrath. Miss Wallrath later died and the comptroller assessed inheritance taxes on Mr. Wallrath for one-half the amount on deposit in these accounts on the date of Miss Wallrath's death. Mr. Wallrath paid the tax and then sued the comptroller for return of the funds. The Supreme Court held that no inheritance tax should have been assessed against Mr. Wallrath because no interest passed to him upon his sister's death in that a valid joint tenancy had been created by Mr. and Miss Wallrath; "each took full title to the property by the instrument creating the joint tenancy".

Alternatively, assuming that both Mingee and Thornburg contributed their separate funds towards the purchase of the certificate, we would again be confronted with a joint tenancy with right of survivorship between Mingee and Thornburg. *Estate of Reynolds v. Reynolds,* 443 S.W.2d 601 (Tex. Civ.App.—Dallas 1969, writ ref'd n. r. e.).

Mingee's acts did not serve to sever this joint tenancy. Executors cite several cases in asserting the contrary. They cite *Yates v. Blake,* 491 S.W.2d 751 (Tex.Civ.App.— Corpus Christi 1973, no writ). *Yates* is inapplicable here since it dealt with parties' rights to a certificate of deposit under a gift theory rather than joint tenancy with right of survivorship.

■ Executors also cite *Karlen v. Karlen,* 235 N.W.2d 269 (S.D.1975) for the proposition that a donor joint tenant terminates a joint tenancy bank account upon demand for release of the moneys from the bank. *Karlen* is distinguishable, however, in that

the case involved the question of whether a joint depositor's clerical error, i. e., failure to sign a withdrawal slip, invalidated his attempt to close out a joint account and open two new joint accounts. We are not here dealing with clerical errors. Moreover, in *Karlen* the joint tenant seeking withdrawal apparently possessed a right to demand withdrawal at the time it was attempted. In the present case, it is not clear, as discussed supra, that Mingee had the right to withdraw the funds upon his demand without tendering the certificate. Next, Executors cite *Manufacturers National Bank v. Schirmer,* 303 Mich. 598, 6 N.W.2d 908 (1942) in which a mother opened a savings account in her name and that of her daughter payable to either or the survivor upon the death of one. Later the mother sent a communication to the bank stating that any future withdrawals without her consent would leave the bank open to suit. The mother subsequently died and the daughter sued to recover the funds claiming her right of survivorship under the joint tenancy account. The Michigan court awarded the funds to the mother's estate first noting that a Michigan statute, similar to Tex.Rev.Civ.Stat.Ann. art. 852a, § 6.08 (Supp.1978), provided that the savings institution was free to allow withdrawals by either party to a joint account prior to receiving notice to disallow further withdrawals, and that the effect of such notice, if given, was to limit payment from the account only to the party or parties whose money went into the joint account. The court also noted that Michigan does not recognize any title in a donee-beneficiary of a joint account, only a presumption of ownership, and that the effect of the notice therein destroyed the presumption of ownership in the joint tenant daughter. Conversely, the "freeze order" in the present case merely prevented both parties to the account from withdrawing funds. Article 852a § 6.08, supra, with its provision for "freeze orders" is designed to act as a protective statute for institutions that pay funds out on survivorship accounts. *Reed v. Reed,* 283 S.W.2d 311 (Tex.Civ.App.— Dallas 1955, no writ). The provision for

"freeze orders" was intended to enable a bank to withhold funds from all to a joint account without incurring liability. It was not intended to affect ownership of funds. *Reed v. Reed,* supra; *Pruett v. First Nat. Bank of Temple,* 175 S.W.2d 658 (Tex.Civ. App.—Austin 1943, no writ). Accordingly, we do not find *Schirmer* to be applicable to the instant case.

Finally, on their termination of unity of title contention, Executors cite *Hoover v. El Paso National Bank,* 498 S.W.2d 276 (Tex. Civ.App.—El Paso 1973, writ ref'd n. r. e.). *Hoover* is distinguishable from the instant case in that there the joint tenant's act which severed the joint tenancy was a contract to convey the grantor's property interest in a joint tenancy. The court held that the contract destroyed the parties' unities of title and time and that a tenancy in common resulted. See 15 Tex.Jur.2d Cotenancy § 4 (1960) (stating that to create the estate of joint tenancy there must have been the four unities of time, title, interest, and possession). Mingee's "freeze order" and request, on the other hand, did not transfer any interest nor was a contract entered for the purpose of transferring his interest. As heretofore stated, the "freeze order" merely prevented both parties to the account from withdrawing funds; their rights to possession of the funds remained equal and the unities of title were not affected.

Had Mingee entered into a contract to convey, or had conveyed, his interest in the account prior to his death, the joint tenancy would have been severed, and a tenancy in common substituted. See *Hoover* supra. Assuming a tenancy in common had resulted, the "freeze order" would have continued with force and effect after Mingee's death, and his Executors would have presumably been able to bring an action to recover at least one-half of the account. As an alternative remedy, Mingee might have sued for and obtained a decree of partition prior to his death, which would have terminated the joint tenancy. A pending partition action interrupted by the death of one of the parties would leave nothing to parti-

tion, however. 20 Am.Jur.2d, Cotenancy and Joint Ownership, § 20 n. 1 (1965). The appellants' contentions in their second category are overruled.

By their third category of arguments and contentions, Executors urge that the account in question was a convenience account. Thus Thornburg acquired no interest in the account itself.

■ A convenience account is one in which the depositor has not surrendered his exclusive right to the funds. *Dulak v. Dulak*, 513 S.W.2d 205 (Tex.Sup.1974). It is one in which the depositor "for the sole purpose of his own convenience, makes a joint deposit so that the other person may, for the convenience and sole benefit of the depositor, draw funds and apply them to the use of the depositor". *In re Stavers' Estate*, 218 Wis. 114, 260 N.W. 655 (1935) (cited with approval in *Krueger v. Williams*, 359 S.W.2d 48 (Tex.Sup.1962)).

Executors argue that *Dulak*, which held that a father-son joint bank account was merely a convenience account, was decided on facts similar to those in the present case. We disagree. In *Dulak* an 85 year old, deaf, and nearly blind father, who had just moved in to live with his son for the first time, opened a father-son joint checking account. That same day the father entered the hospital for a cataract operation. The jury found that the father signed the joint account signature card for the limited purpose of providing a convenient method for the payment of hospital expenses while incapacitated. It was also inferred that the son regarded the account as his father's.

■ In the present case, we find no evidence that the account's creation was intended solely for the purpose of convenience for Mingee. There is no evidence that Mingee was ill at the time this account was opened, and that he needed someone to help him manage his financial affairs. Moreover, Mingee lived in Corpus Christi, Texas, and Thornburg lived in Natchez, Mississippi, when the savings account was opened in their joint names. Clearly, geographical separation precluded most if not all possible benefit Mingee might have derived from Thornburg's name being on the certificate. Compare *Estate of Reynolds v. Reynolds,* supra. Finally, it should be noted that the certificate was taken out shortly after Mingee returned to Corpus Christi, after having lived with Thornburg in Natchez, Mississippi. This fact coupled with Thornburg's later possession of the certificate without any evidence of fraud, mistake, or undue influence indicates that Mingee intended to pass at least some interest in the certificate to Thornburg, thereby surrendering exclusive right to the funds. Executors' third category of assertions is overruled.

■ In their fourth category of reasons for reversal, Executors say that the trial court erred in making certain findings of fact because there was either no evidence or insufficient factual evidence to support these findings. The first challenged finding of fact (no. 9) states that prior to his death, Mingee voluntarily delivered the certificate to Thornburg. We agree that there is no evidence of the manner by which Thornburg acquired the certificate. This fact finding, however, is not essential to the disposition of this case, and therefore does not constitute reversible error. Rule 434 T.R.C.P. The next questioned finding of fact (no. 10) states that the certificate remained in the possession of and under the exclusive control of Thornburg and/or his attorney from the time it was delivered to him until after the death of Mingee. In his affidavit, E. M. Hudspeth stated that he had personal knowledge that Norman H. Thornburg had six certificates of deposit during Mingee's lifetime bearing the name R. C. Mingee and that Thornburg returned five of them, but kept the certificate in question. Charles R. Cunningham stated in his affidavit that he has the original certificate in his personal possession. There is no evidence in the record of possession by any other persons other than Thornburg and Cunningham.

■ Finally, Executors challenge the finding (no. 1) that Mingee and Thornburg opened a certificate of deposit with First

Savings. The signature card contract itself is sufficient evidence to show that both Mingee and Thornburg opened the account, the basis of the certificate of deposit. Appellants' last category of contentions is overruled.

The judgment of the trial court is AFFIRMED.