Michael Ross WIGHTMAN and Erin Jennell Wightman by and through their next friends Howard Wightman and Evelyn Wightman, Appellants (Plaintiffs below),

v.

AMERICAN NATIONAL BANK OF RIVERTON, Appellee (Defendant and Third Party Plaintiff below),

v.

William MALODY, Jr., a/k/a William M. Malody, and John R. Benesch, as Administrator of the Estate of Page Malody, Deceased, (Third Party Defendants below).*

No. 4949.

Supreme Court of Wyoming.

May 5, 1980.

Rehearing Denied May 20, 1980.

Tom C. Toner of Redle, Yonkee & Arney, Sheridan, for appellants.

Wm. H. Brown and Claude W. Martin of Brown, Drew, Apostolos, Massey & Sullivan, Casper, and Donald P. White of White, Avery & Howard, Riverton, for appellee.

ON REHEARING

Before RAPER, C. J., McCLINTOCK, THOMAS and ROSE, JJ., and GUTHRIE, J., Retired.**

---

* Not parties to this appeal.

** At the time this case was initially argued before the court, Guthrie, J., was Chief Justice.

He retired from the court on December 13, 1978. By order of the court entered on January 1, 1979, he has been retained in active judicial service pursuant to § 5, Art. V, Wyoming Con-

THOMAS, J., delivered the opinion of the court.

THOMAS, Justice.

Upon the rehearing which was granted in this case a majority of the court became convinced that the court in its original opinion arrived at an erroneous conclusion.[1] The issue to be resolved is whether the children of a deceased owner of a certificate of deposit, upon being named as joint tenants on the certificate of deposit, acquired an interest superior to that of the bank to which the certificate of deposit was given as collateral to secure a loan. The problem between these parties arose out of the use of the certificate of deposit as collateral, and the rules of law relating to the rights of a secured party in possession under Article 9 of the Uniform Commercial Code, § 34–21–901, et seq., W.S.1977, should be invoked to resolve that problem. In the court's original opinion in this case the law of gifts coupled with rules relating to bank deposits was applied to the end that a joint tenancy in the children was recognized in the certificate of deposit. The court then concluded that the interest of the children as joint tenants was superior to the interest of the bank as a secured creditor. The prior decision which resulted in the recognition of a superior interest in the children of the debtor did not address the real question. The court now has concluded that the record fails to demonstrate facts which could lead to any conclusion other than the proposition that the debtor's children received their interest subject to the security interest of the creditor. We shall affirm the judgment of the district court.

When the appeal was first heard we noted the issues as stated by the appellants as follows:

"1. The purchase of the certificate of deposit vested in the children a joint interest in the certificate of deposit with a right of survivorship.

"2. There is evidence from which the jury could find that Page Malody intended to vest a present interest in the certificate of deposit in her children and grant them rights of survivorship in the certificate of deposit.

"3. Page Malody's interest in the certificate of deposit terminated on her death. The note which the collateral agreement was to secure was not due until after her death. The Bank's lien or set-off necessarily terminated on Page Malody's death. The execution of the collateral agreement is not inconsistent with an intent to vest the children with a present beneficial interest in the certificate of deposit."

As we will make clear, only the third question suggested by the appellants at that time purports to describe the differences that had arisen between the parties. It does not adequately state the issue. In the petition for rehearing the American National Bank of Riverton describes the question in this way:

"The principal question in the present posture of the case is WHETHER PAGE MALODY CREATED A JOINT TENANCY WITH RIGHT OF SURVIVORSHIP IN THE CD # A–1053 WHEN SHE LISTED ALTERNATE PAYEES ON THE CD WHEN THE CD WAS RE–ISSUED IN SUBSITUTION [sic] FOR CD # 540 AND AT THE SAME TIME PLEDGING THE RE–ISSUED CD AS COLLATERAL FOR A LOAN UNDER THE SUPPLEMENTAL COLLATERAL AGREEMENT?"

This statement of the issue also is wide of the mark because its focus is upon the interest which was created in her children by Page Malody. There is no necessity here to debate the law of gifts, nor to reiterate prior statements by this court as to the rights created by certain styles of bank deposits. The fundamental and narrow issue which must be resolved is whether Page Malody, at the time the joint interest in the

---

stitution, and § 5–1–106(f), W.S.1977, and has continued to participate in the decisions and opinions of the court in this case.

1. *Wightman v. American National Bank of Riverton*, Wyo., 591 P.2d 903 (1979).

children was created, had an unrestricted right to deal with the certificate of deposit, or whether it then was subject to a prior lien in favor of the bank to which any interest of Page Malody and her children was subject.

The facts material to the resolution of this case under Article 9 of the U.C.C. are not in dispute. They can be stated rather briefly. Page Malody was the mother of the minor plaintiffs-appellants who brought this action through their next friends. On October 28, 1974, Page Malody deposited $150,000 at the American National Bank of Riverton which was represented by a certificate of deposit # 540, which indicated on its fact that it was non-negotiable. On November 29, 1974, in connection with a loan made by the American National Bank of Riverton to Page Malody and her husband, Page Malody furnished certificate of deposit # 540 as collateral to secure a promissory note in the amount of $154,775. The document evidencing that security interest is titled a "Collateral Agreement." The American National Bank of Riverton then perfected its security interest by retaining possession of certificate of deposit # 540.

The certificate of deposit was for 120 days, and it matured on February 25, 1975. At that time certificate of deposit # 540 stopped earning interest according to its terms. On March 1, 1975, Page Malody went to the American National Bank of Riverton to renew the certificate of deposit. On that occasion a new non-negotiable certificate of deposit was issued by the American National Bank of Riverton in the amount of $154,875. This certificate of deposit was identified as # A–1053; it was for a period of six months; and it provided that it was automatically renewable. At the request of Page Malody it was issued to "Page Malody or Michael Ross Malody or Erin Jenall [sic] Malody." At that time Page Malody executed another "Collateral Agreement" which identified certificate of deposit # A–1053, and which was to secure the promissory note dated November 29, 1974. With the exception of the date, the identification of the certificate of deposit,

and the reference to the specific date of the promissory note, the two "Collateral Agreements" are identical. It would appear that the person who prepared the second "Collateral Agreement" was given instruction by interlineation upon the first one. The American National Bank of Riverton retained possession of certificate of deposit # A–1053.

▮ Nothing further was done with certificate of deposit # A–1053 prior to Page Malody's death in October of 1975. When the note to the American National Bank of Riverton became due Page Malody's husband defaulted, and the American National Bank did apply the proceeds of the certificate of deposit plus interest to the debt owed by the Malodys. When it was discovered that the appellants were named, apparently as joint owners of this certificate of deposit, this action was brought on their behalf to recover the proceeds of certificate of deposit # A–1053 from the American National Bank of Riverton. The district court granted the motion of the American National Bank of Riverton for summary judgment thereby recognizing the superior right of the American National Bank of Riverton in the certificate of deposit, although it did not specifically rely upon the provisions of the U.C.C. as adopted in Wyoming. The recognized rule in our state is that a judgment will be affirmed on appeal if sustainable on any legal ground appearing in the record. *P & M Cattle Co. v. Holler*, Wyo., 559 P.2d 1019 (1977); *Crockett v. Lowther*, Wyo., 549 P.2d 303 (1976); *Zitterkopf v. Roussalis*, Wyo., 546 P.2d 436 (1976); *Peters Grazing Association v. Legerski*, Wyo., 544 P.2d 449, rehearing denied 546 P.2d 189 (1975).

▮ The court now concludes that the rights of these parties are controlled by the provisions of Article 9 of the U.C.C., Secured Transactions, § 34–21–901, et seq., W.S.1977. Section 34–21–905, W.S.1977, provides in pertinent part as follows:

"(a) In this article unless the context otherwise requires:

*     *     *     *     *     *

"(vii) 'Instrument' means a negotiable instrument (defined in section 3–104 [34–21–802]) *or any other writing which evidences a right to the payment of money and is not itself a security agreement or lease and is of a type which is in ordinary course of business transferred by delivery with any necessary indorsement or assignment*;" (Emphasis supplied.)

An instrument as so defined includes a certificate of deposit. *Worden v. Thornburg*, Tex.Civ.App., 564 S.W.2d 480, 482 (1978); *First National Bank in Grand Prairie v. Lone Star Life Ins. Co.*, Tex.Civ.App., 524 S.W.2d 525 (1975); *Southview Corp. v. Kleberg First National Bank*, Tex.Civ.App., 512 S.W.2d 817 (1974); and *Howick v. Bank of Salt Lake*, 28 Utah 2d 64, 498 P.2d 352 (1972). Upon analysis it would seem to be true as suggested by the Texas Court of Civil Appeals that a certificate of deposit is simply a commercially glamorous name for a promissory note. *Southview Corp. v. Kleberg First National Bank*, supra.[2] The

2. We must recognize that in the original opinion in this case the majority and the minority concurred in the proposition that the provisions of the Uniform Commercial Code did not pertain because of the language of § 34–21–904(a), W.S.1977, which provides in pertinent part as follows:

"(a) This articles [sic] does not apply:

\*     \*     \*     \*     \*     \*

"(xi) To a transfer in whole or in part of the following: any claims arising out of tort; any deposit, savings, passbook, or like account maintained with a bank, savings and loan association, credit union or like organization."

Since the adoption of the Uniform Commercial Code in Wyoming the Uniform Act has been amended so that § 9–105(e) excludes from the definition of a deposit account an account evidenced by a certificate of deposit. Subsection (e) which was added now provides:

"(e) 'Deposit account' means a demand, time, savings, passbook or like account maintained with a bank, savings and loan association, credit union or like organization, *other than an account evidenced by a certificate of deposit*." (Emphasis supplied.) 3 U.L.A., U.C.C., 1979 Pamphlet, p. 25.

Similarly, the definitions provisions were adjusted *so that the uniform version of § 9–104(1)* now in excluding certain transactions from the application of the article provides that it does not apply:

"(1) to a transfer of an interest in any deposit account (subsection (1) of Section 9–105),

transaction being subject to the U.C.C., the statutory provisions spell out clearly the rights of the American National Bank of Riverton and Page Malody and her children under the undisputed facts. When the American National Bank of Riverton received certificate of deposit # 540 pursuant to the signed "Collateral Agreement" on November 29, 1974, the security interest of the American National Bank of Riverton in that certificate of deposit was perfected. Section 34–21–934, W.S.1977. It clearly had custody coupled with a right or interest of proprietorship in the certificate of deposit as possession is defined in *Craig v. Gudim*, Wyo., 488 P.2d 316 (1971). On March 1, 1975, when certificate of deposit # 540 was made available to Page Malody for collection, the security interest of the American National Bank of Riverton was maintained for a period of 21 days by § 34–21–933, which provides in pertinent part as follows:

except as provided with respect to proceeds (Section 9–306) and priorities in proceeds (Section 9–312)." 3 U.L.A., U.C.C., 1979 Pamphlet, p. 22.

In adopting the U.C.C. the Wyoming Legislature enunciated a legislative policy to the end that the U.C.C. should be liberally construed and should be applied so as to promote its underlying purposes and policies which include "To make uniform the law among the various jurisdictions." § 34–21–102(b)(iii), W.S.1977. Applying the U.C.C. so as to treat a certificate of deposit as an instrument subject to Article 9 results in a construction of our statute which is consistent with the amendments by the drafters of the U.C.C. A justification for the exclusion of accounts but not certificates of deposit is found in the following language in *Miller v. Wells Fargo Bank International Corp.*, 540 F.2d 548, 560 (2d Cir. 1976):

" \*   \*   \*   Money deposited in a general account at a bank does not remain the property of the depositor. Upon deposit of funds at a bank, the money deposited becomes the property of the depositary bank; the property of the depositor is the indebtedness of the bank to it, a mere chose in action. \*   \*   \*"

Where as here the chose in action is represented by an "instrument" the chose in action is subject to the provisions of the Uniform Commercial Code. This distinction is recognized in part in *Craig v. Gudim*, Wyo., 488 P.2d 316 (1971), which did not involve a perfected security interest.

"(e) A security interest remains perfected for a period of twenty-one (21) days without filing where a secured party having a perfected security interest in an instrument,

\*   \*   \*   \*   \*   \*

"(ii) Delivers the instrument to the debtor for the purpose of ultimate sale or exchange or of presentation, collection, renewal or registration of transfer."

When certificate of deposit # A–1053 was issued payable to "Page Malody or Michael Ross Malody or Erin Jenall [sic] Malody," it represented the proceeds of certificate of deposit # 540. The security interest of the American National Bank of Riverton continued in certificate of deposit # A–1053 and that security interest was perfected when it obtained possession of that instrument in accordance with the "Collateral Agreement" executed on March 1, 1975. Section 34–21–935, W.S.1977, provides in pertinent part as follows:

"(a) 'Proceeds' includes whatever is received when collateral or proceeds is sold, exchanged, collected or otherwise disposed of. \* \* \*

"(b) Except where this article otherwise provides, *a security interest* continues in collateral notwithstanding sale, exchange or other disposition thereof by the debtor unless his action was authorized by the secured party in the security agreement or otherwise, and *also continues in any identifiable proceeds including collections received by the debtor.*

"(c) The security interest in proceeds is a continuously perfected security interest if the interest in the original collateral was perfected but it ceases to be a perfected security interest and becomes unperfected ten (10) days after receipt of the proceeds by the debtor unless:

\*   \*   \*   \*   \*   \*

"(ii) The security interest in the proceeds is perfected before the expiration of the ten (10) day period." (Emphasis supplied.)

The only exception to the maintenance of the security interest of the American Na-

tional Bank of Riverton in such an instance is found in § 34–21–937 pursuant to which the rights of any bona fide purchaser for value without knowledge who takes possession of the instrument in the ordinary course of his business will be superior to those of the secured party. The children who are claiming this certificate of deposit meet none of those criteria. *Commercial Banking Company v. Spurlock*, 238 Ga. 123, 231 S.E.2d 748 (1977), is not helpful in resolving the issues before us because in that case the joint interest in the certificate of deposit antedated its initial pledge by one of the co-owners. This case is the inverse of that situation.

It is apparent that the applicable rules of the Uniform Commercial Code reach the same result as would have been reached under the common law. *Clark v. Iselin*, 21 Wall. (88 U.S.) 360, 22 L.Ed. 568 (1874); *Merchants Collection Agency, Ltd. v. Mitchell*, 32 Haw. 343 (1932); *Hoerner v. First National Bank of Jackson*, Miss., 254 So.2d 754 (1971); *White v. Platt*, 5 Denio 269 (N.Y.1848); *Hickok v. Cowperthwait*, 210 N.Y. 137, 103 N.E. 1111 (1913); *Bundy v. Commercial Credit Co.*, 202 N.C. 604, 163 S.E. 676 (1932); and Restatement of the Law of Security, § 11, p. 38, and § 16, p. 62 (A.L.I.1941). See *Manufacturers Acceptance Corporation v. Hale*, 65 F.2d 76 (6th Cir. 1933); and *Foote v. Sun Life Assur. Co. of Canada*, 173 So. 477 (La.App.1937). In cases relating to the reaccomplishment of chattel mortgage documents and real estate mortgages the Supreme Court of Wyoming has adopted the rule that in either instance a lien is not lost if new notes, mortgages, or security instruments are drawn unless that result was intended by the parties. *Wakeman v. Board of Com'rs of Weston County*, 40 Wyo. 53, 274 P. 12 (1929); *Megown v. Fuller*, 38 Wyo. 211, 266 P. 124 (1928), rehearing denied 268 P. 189 (1928).

The court now holds that as of the critical time on March 1, 1975, the status quo of these parties was such that the American National Bank of Riverton had a perfected security interest in certificate of deposit # 540. The rules provided by the sections

of the Uniform Commercial Code set forth above maintain the status quo of these parties with respect to certificate of deposit # A–1053. The undisputed material facts are consistent with and peculiarly susceptible to the application of those rules. In order for a finder of fact to infer an intention of the parties to depart from those rules to the end that the lien of the pledgee would be lost, the deliberate intention of the parties to so depart must be shown clearly and unequivocally. That intention would best be demonstrated by a written release of the instrument from the pledge. There is nothing in this record which would manifest anything beyond an equivocal, perhaps not more than arguable, situation which would support such an inference.

It follows that there is no material issue of fact, and the judgment of the district court is affirmed. The prior opinion of the court in this case is vacated.

RAPER, Chief Justice, dissenting.

I dissent. My views remain those which I enunciated on March 13, 1979 in *Wightman v. American National Bank of Riverton*, Wyo.1979, 591 P.2d 903.[1]

A majority of this court now determines that without any doubt this case was one to be governed in its entirety by Art. 9 of the Uniform Commercial Code and, further, that Art. 9 is unambiguously clear in its governance of the facts and circumstances of this case. This is so even though the parties never structured the underlying events to be within the contemplation of Art. 9. Not one single step in the events which transpired between the appellant and the appellee during the period October 1974 through December 1975 was carried out in accordance with the provisions of Art. 9. When the appellee took the certificate of deposit, it gave notice that it was exercising its right of "set-off." As the events unfolded in the district court, the only reference to Art. 9 made by ANB was to the fact that they had perfected a security interest in the

C.D. by possession. In the original appeal, ANB did rely somewhat on Art. 9 although not on any of the sections now isolated by the majority as standing for the proposition that ANB was insulated from loss of its interest in the C.D. without regard to the actions it acquiesced in on March 1, 1975.

As I read the majority opinion, it would appear that no matter what ANB did they were protected—even if it "authorized" the action of the pledgor. Section 34–21–935(b), W.S.1977. The majority opinion treats as inconsequential the events of March 1, 1975. The new C.D. and most importantly the *new* pledge are the "turning point" of this case. Page Malody should be allowed to rely on that event. In my view, the law is clear that when that new arrangement was made on March 1, 1975—without regard to anything that happened before—ANB had an interest only so long as Page Malody was alive. In my original opinion, we agreed that was what happened in that case and that the law commanded that result. I am now more convinced than ever that is clearly the law. See *Commercial Banking Company v. Spurlock*, 1977, 238 Ga. 123, 231 S.E.2d 748, for a result identical to the original opinion here. The only way to distinguish that case from ours is to argue the events of March 1, 1975. Also see, *Ogilvie v. Idaho Bank & Trust Co.*, 1978, 99 Idaho 361, 582 P.2d 215. Whether ANB knew that to be the state of the law is irrelevant. I am sure it did, however, for it is that very principle which also protects it and authorizes the bank to pay the survivor. Section 13–3–601(b), W.S.1977.

But we need not rely on that statute alone in determining that this is the law. Sections 34–1–140, 34–21–310 and 34–21–316, W.S.1977; *Wightman v. American National Bank of Riverton*, supra, 591 P.2d at 906. Whether Page Malody clearly understood the law is also irrelevant. *ANB authorized this whole transaction.* It was not something Page Malody accomplished by sleight of hand, deception, or otherwise

1. The majority opinion does not offer a complete statement of facts; so, in order to fully understand the background, it is necessary to

consult the original opinion which contains the complete procedural and factual history of this case.

without ANB's knowledge and acquiescence. Page Malody should have the benefit of the law, just as ANB clearly would if the tables were turned. If ANB did not want to accept the new C.D. and the new pledge, it could have told Page Malody that and taken any number of alternative courses of action (such as deeming itself insecure and exercising its rights to the C.D.). And so could have Page Malody. If ANB would not accept the arrangement she suggested, then Page Malody, while she was still alive and able to protect her children, could have made alternative arrangements to ensure that, in the event of default on the loans, her children would somehow be protected. Unfortunately, she had been dead some two months when ANB "set-off" her children's C.D. and a domino series of events brought financial ruin to the Malody ranch. As a result of the majority opinion, ANB alone does not have to take responsibility for its mistakes. Its mistakes are nimbly and blithely sidestepped by applying law which, in my view, is not applicable and ignoring facts that are pivotal and undisputed. Moreover, the Art. 9 provision which the majority now relies on as the key, § 34–21–935(b), supra, is applied without consideration to the language " * * * unless his action was authorized by the secured party * * *." So, even if Art. 9 must apply, the result should be identical because *the bank authorized what was done* and granted the rights now claimed by the children.

I shall iterate my view that Art. 9 does not apply. My reasons for so deciding are well described at *Wightman v. American National Bank of Riverton*, supra, 591 P.2d at 906. In part, I conclude this because ANB did not follow Art. 9 procedures. But, I am extremely hard pressed to accept, even arguendo, the conclusion reached by the majority. It is notable that not one word about Art. 9 is mentioned in the petition for rehearing. The appellant has had no opportunity to meet this unexpected tack. No doubt this is so because all five of us agreed it did not apply. Perhaps that avenue appeared rather hopeless to ANB—which it should be. Rather the petition for rehearing relies on an esoteric discussion of unities, in combination with hyperbole. This seems to have carried the day. Calling the decision "bizarre," "dangerous," et cetera, apparently has caused some of my brethren to back away from our original conclusion to embrace one that treats Art. 9 as a one-way street which protects only secured parties.

To avoid further digression on that subject, I return to iterate why Art. 9 should not be applied. Section 34–21–904(a)(xi), supra, in unmistakable language says Art. 9 does not apply to " * * * *any* deposit, savings, passbook or like account maintained with a *bank* * * *." I can only conclude, as I think any reasonable person who walks into a *bank* and puts *savings* into the form of a certificate of *deposit* would conclude, that person thinks he has made a savings deposit in a bank.

The majority reasons that this exclusion of savings deposits from the governing realm of Art. 9 is overcome by § 34–21–905(a)(vii), W.S.1977, which defines "instrument." In other words, this all-encompassing definition operates to change the specific words of § 34–21–904(a)(xi) and calls Art. 9 into play. This is paradoxical and unreasonable in my view. It is even more unreasonable that the majority suggests that an amendment, which changed the code, *but which has not been adopted in Wyoming*, can be utilized to infer that this is what the code really meant all along. The authority from the Texas Court of Civil Appeals, and the apparent reference to the concurring opinion in *Howick v. Bank of Salt Lake*, 1972, 28 Utah 2d 64, 498 P.2d 352, does not, and in my view cannot, justify this extraordinarily faulty conclusion. To reach such a conclusion, one must ignore the meaning of words that are so clear that no one could seriously doubt their meaning. That one other court may have done so several times, does not alter my understanding of plain language.

The code is intended to simplify and clarify. The interpretation put on it by the majority denigrates the commendable effort by its authors to make the law crystal

clear. The code is not easy to digest—but I hope it will always be read so that those who must depend upon it can trust that it means what it says. If § 34–21–904(a)(xi) intends to say that *any* savings deposit *except* a C.D. is excluded from coverage of the article, then it should say that. However, § 34–21–905(a)(vii) cannot do that by such a syntactical legerdemain as that relied on by the majority. To a lay person, the U.C.C. may be rather formidable, if not impenetrable. I think it is a formidable document to many, if not most, practicing lawyers and courts as well. It is well known that to truly ascertain its meaning one must search out and follow many sections and subsections, and the comments of the authoring committee. In that process the sections come to life, for each is interdependent with many others. But this process cannot be used to alter the meaning of unambiguous words and phrases. Otherwise, we reach a point of chaos in its interpretation where it means everything to everybody and ultimately it means nothing.

In this case Art. 9 is misapplied. I would have denied the petition for rehearing and confirmed our adherence to the original decision.